

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-26-1997

# D.R. v. Bd Ed E Brunswick

Precedential or Non-Precedential:

Docket 95-5634

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"D.R. v. Bd Ed E Brunswick" (1997). *1997 Decisions*. Paper 70.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/70

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 95-5634

———————————

D.R., by his parents and guardians M.R. and B.R.

v.

EAST BRUNSWICK BD. OF EDUC.

Appellant

———————————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 94-cv-04167)

———————————

Argued June 5, 1996

Before: SCIRICA AND ROTH, <u>Circuit Judges</u>
and O'NEILL[1], <u>District Judge</u>

(Opinion Filed: March 26, 1997)

———————————

Herbert D. Hinkle, Esq. (Argued)
Law Offices of Herbert D. Hinkle
2651 Main Street
Suite A
Lawrenceville, NJ  08648

        Attorney for Appellee

_____

        [1]Honorable Thomas N. O'Neill, Jr., United States District
Court Judge for the Eastern District of Pennsylvania, sitting by
designation.

Martin R. Pachman, Esq. (Argued)
Martin R. Pachman, P.C.
60 East Main Street
Freehold, NJ  07728

Attorney for Appellant

_____

OPINION OF THE COURT

_____

ROTH, Circuit Judge:

This action was brought before the United States District Court for the District of New Jersey pursuant to the Individuals with Disabilities Education Act ("the IDEA" or "the Act"), 20 U.S.C. § 1401 et seq.  It raises an important question regarding the enforceability of settlement agreements made between parents and school boards with the intent of enforcing the IDEA.  On appeal, the East Brunswick Board of Education ("the Board") challenges the district court's order granting summary judgment against it.  The district court held the Board liable for the cost of providing personal aides for D.R., a disabled person, pursuant to the requirements of the IDEA.  The Board claims that the district court erred when it set aside a binding settlement agreement voluntarily entered by the parties.  The district court acknowledged that enforcement of the settlement

2

agreement would have required it to reach an opposite conclusion.

We review the district court's decision granting summary judgment de novo, "applying the same standard as the district court." Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); see W.B. v. Matula, 67 F.3d 484, 493 (3d Cir. 1995) (applying plenary review standard to summary judgment order in context of IDEA dispute). In making this de novo review, we recognize that we must give "due weight" to the underlying state administrative proceedings. Board of Education v. Rowley, 458 U.S. 176, 206 (1982). The Third Circuit has interpreted the Supreme Court's instruction in Rowley to require that a court "consider -- although not necessarily to accept -- the administrative fact findings." Carlisle Area School v. Scott P., 62 F.3d 520, 529 (3d Cir. 1995), cert. denied, --- U.S. ---, 116 S.Ct. 1419 (1996). In addition, we must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Babbitt, 63 F.3d at 236.

The district court had subject matter jurisdiction over the appeal from a final decision by an administrative law judge ("ALJ") pursuant to 20 U.S.C. § 1415(e)(1) & (2). We have jurisdiction to review the district court's final order granting summary judgment pursuant to 28 U.S.C. § 1291.

We conclude that the settlement agreement was improperly voided by the district court. On the facts of this

3

particular case, the settlement agreement was voluntarily and willingly entered by the parties. It is therefore a binding contract between the parties and should have been enforced as written. Pursuant to the terms of the agreement, the parents of the child are responsible for all additional services not contemplated by the parties at the time of settlement. We will therefore reverse the opinion of the district court and grant summary judgment in favor of the Board. However, we emphasize that our holding is limited to the facts of this case and should not be read to extend beyond this case and this agreement.

## I.

D.R. is a multiply handicapped individual classified by the New Jersey Board of Education as in need of special education. He was diagnosed at age two with Athetoid Ataxic Cerebral Palsy and moderate retardation. D.R. is now twenty-one years old, but his adaptive behavior is estimated to be at the preschool level. The parties agree that D.R. has difficulty performing simple daily tasks by himself. He has difficulty walking, dressing, and toileting without assistance. In the classroom, he often regresses into a hypnotic rocking behavior and must be constantly monitored by an assistant in order to engage him in classroom activity.

At age 4, D.R. began attending day school at the Cerebral Palsy Center ("CPC") in New Jersey, where he remained until January of 1992. While at CPC, D.R. resided with his

4

parents in East Brunswick, New Jersey.  During the first semester of the 1991-92 school year, D.R.'s parents became convinced that he was not progressing at CPC and should be enrolled in a residential program.  In December 1991, D.R.'s parents filed a petition with the New Jersey Department of Education requesting a due process hearing under the IDEA.  The petition alleged that the CPC program was not appropriate for D.R. and that he would benefit from a transfer to the Benedictine School, an out-of-state residential school in Ridgely, Maryland.

The Board, however, disagreed that residential placement was necessary for D.R.  His parents then in early January 1992 unilaterally placed him at the Benedictine School.  The Benedictine School informed D.R.'s parents at that time that their son's acceptance in the program was on a "trial basis" that would last for five weeks.  They were told that the proposed program might be modified depending on D.R.'s adaptation to his new circumstances.  The Board now complains that it was never informed of the "trial" nature of D.R.'s acceptance at Benedictine nor that the program in which he was placed was subject to modification.

Before D.R.'s trial period was complete, his parents and the Board met at a mediation conference and entered a settlement agreement.  The parties agreed that:

1) The East Brunswick Board of Education will compensate placement costs at the Benedictine School for D.R. at an annual rate of $27,500 prorated for the balance of the 1991-2 school year including summer of 1992 and beginning January 1, 1992;

2) For the 1992-93 school year the Board will contribute 90% of any increase over the 1991-92 rate.

3) The Board will be absolved of any other or further costs based upon this placement, related service, or transportation in connection therewith.

App. 408.

During D.R.'s first semester at Benedictine, the school "practically" provided one-to-one assistance. Classes were small in size, with a high ratio of assistants and teachers to students; weekend and residential staff was able to provide the personal help that D.R. needed with daily functions. Later in the adaptation process, however, the school felt that it could not continue to expend such resources on D.R. without neglecting its other students. The school informed D.R.'s parents that D.R. would not be allowed to re-enroll for the 1992-93 school year unless personal aides were provided.

In April of 1992, the Board received a cost estimate from the Benedictine School for the 1992-93 school year. The tuition totalled $62,487 -- more than double the amount provided by the settlement agreement. In addition to the amount that the Board had agreed to pay in 1992-93, the estimate charged the Board for the services of a special classroom aide and a special residential aide, each at a cost of $16,640.

The Board refused to pay any portion of the cost of the personal aides. It asserted that, under paragraph 3 of the settlement agreement, the cost of the aides were "related

6

service[s]" for which the Board was not liable.  D.R.'s parents disagreed and requested a hearing before a New Jersey Administrative Law Judge.  They sought an order that D.R. was in need of residential placement, that personal aides were necessary, that the current placement at Benedictine was appropriate, and that the Board was required to pay for the cost of the placement and the necessary aides.

At the hearing, the Board moved for dismissal on grounds that the settlement agreement was binding and that under the agreement the Board was not liable for the cost of the aides.  The ALJ agreed.  She dismissed D.R.'s petition, finding the settlement agreement to be binding and determinative.

D.R.'s parents did not appeal this ruling but instead requested a hearing before the New Jersey Department of Education.  In response, the Board argued that only a few weeks earlier, the same parties debated the same issues before a different ALJ who had dismissed the petition.  The ALJ agreed with the Board and concluded that D.R.'s second petition was barred by the doctrine of res judicata.

D.R.'s parents appealed the ALJ's decision barring their claim on grounds of res judicata to the U.S. District Court for the District of New Jersey.  Both parties moved for summary judgment.  On the basis of the pleadings and briefs submitted, the court concluded that the settlement agreement was binding. D.R. by M.R. v. East Brunswick Bd. of Educ., 838 F. Supp. 184,

7

195 (D.N.J. 1993). It found that the language of the agreement was unambiguous and required only that the Board pay for 90% of any increase in the cost of an array of services provided the previous year. Because personal aides were not within the array of services previously provided, the district court held that the Board would not be liable for the cost of the aides under the terms of the settlement agreement, unless D.R.'s personal circumstances had changed since the parties entered the agreement. Id. at 190-91 & 194.

The district court therefore remanded the case to an ALJ to determine whether D.R.'s personal circumstances changed following the closing of the agreement. Id. at 195-96. If the ALJ found that D.R.'s circumstances had changed such that the services provided by the agreement no longer satisfied the requirements of the IDEA, the court instructed that the agreement could not bind the parties and should be invalidated. Id. at 194. The Board would then be liable under the IDEA for the cost of the personal aides for the 1992-93 school year.

On remand, the ALJ first concluded that during the 1992-93 school year, one-to-one assistance was effectively provided by the School and was "educationally necessary and consistent with the IDEA." He then found that because D.R.'s disability had not changed, his "personal circumstances" had not changed. As a result, the ALJ again ruled in favor of the Board, holding that the settlement agreement was binding and that the

8

Board was not liable for the cost of the additional aides.

D.R.'s parents appealed this decision to the district court, seeking reversal of the ALJ's order. Again, both parties moved for summary judgment. The district court concluded that the record supported the ALJ's finding that a one-to-one aide was "educationally necessary and consistent with the IDEA." Mem. Op. at 13. It held that this finding dictated the outcome of the case. Applying the Supreme Court's interpretation of the IDEA, the district court concluded that states receiving federal funds under the Act must provide services that are "necessary to permit the child 'to benefit' from the instruction." Mem. Op. at 5 (quoting Rowley, 458 U.S. at 188-89). The district court thus concluded that New Jersey could not refuse to provide educationally necessary services. Such necessary services are the right of the disabled individual and cannot be waived by a contract to provide something less.

As a result, the district court held the Board liable for the cost of the personal aides for the 1992-93 school year, which amount was to be established by agreement between the parties. Following the judgment, D.R.'s parents moved for an award of attorneys' fees and related costs as "prevailing parties" in the litigation. A few days later, the Board filed a notice of appeal. The Board then moved to stay the motion for attorneys' fees filed by D.R.'s parents, pending the outcome of this appeal. D.R.'s parents did not oppose the Board's motion,

9

and the court granted a stay on the matter of attorneys' fees and costs.

## II.

The district court set aside the settlement agreement based on its finding that D.R.'s circumstances had changed since the parties entered the agreement. In finding changed circumstances, the district court rejected the conclusions of the state administrative law judge. The court held that, because D.R.'s circumstances had changed, the personal aides had become "educationally necessary" for him to obtain an appropriate education as guaranteed by the IDEA. The court found that the settlement agreement improperly excused the Board from its duty to provide educationally necessary services, and it therefore concluded that the agreement did not meet the IDEA's mandatory standards. As a result, the district court invalidated the agreement and placed liability for the cost of the personal aides on the Board.

We believe that the district court erred when it found that D.R.'s circumstances changed following settlement. Instead, we find that the only change that occurred in this case appeared on the bill sent by the Benedictine School to the Board. There was no change in D.R.'s individual circumstances; he continued to need individual assistance in toileting, dressing, grooming, and eating. The only circumstance that changed was that Benedictine decided that its staff could not maintain the level of

10

individualized attention that D.R. was receiving at the negotiated price.  The School decided that additional help was needed to deal with D.R.'s <u>unchanged</u> condition, increasing the total cost of services provided by the School.

Once a school board and the parents of a disabled child finalize a settlement agreement and the board agrees to pay a certain portion of the school fees, the parents should not be allowed to void the agreement merely because the total cost of the program subsequently increases.  A party enters a settlement agreement, at least in part, to avoid unpredictable costs of litigation in favor of agreeing to known costs.  Government entities have additional interests in settling disputes in order to increase the predictability of costs for budgetary purposes.

We are concerned that a decision that would allow parents to void settlement agreements when they become unpalatable would work a significant deterrence contrary to the federal policy of encouraging settlement agreements.  <u>See</u> <u>McDermott, Inc. v. AmClyde</u>, 511 U.S. 202, ---, 114 S.Ct. 1461, 1468 (1994) ("Public policy wisely encourages settlements.").  Settlement agreements are encouraged as a matter of public policy because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by courts.  In this case, public policy plainly favors upholding the settlement agreement entered between D.R.'s parents and the Board.

We agree that reaching a settlement agreement during

11

mediation, rather than during litigation, does not lessen the binding nature of the agreement on the parties.  See <u>D.R. by M.R.</u>, 838 F. Supp. at 190.  When the parties entered the settlement agreement at issue in this case, they entered a contract.  <u>In re Columbia Gas System, Inc.</u>, 50 F.3d 233, 238 (3d Cir. 1995) ("In a nonbankruptcy context, we have treated a settlement agreement as a contract."); <u>see also</u> <u>Halderman v. Pennhurst State School & Hosp.</u>, 901 F.2d 311, 318 (3d Cir.), <u>cert. denied</u>, 498 U.S. 850 (1990); <u>New York State Elec. & Gas Corp. v. F.E.R.C.</u>, 875 F.2d 43, 45 (3d Cir. 1989).  We will therefore enforce the agreement as a binding contract voluntarily entered by both parties.[2]

When D.R.'s parents appealed the ALJ's decision to dismiss on grounds of res judicata, the district court noted that, if D.R.'s circumstances had not changed since settlement, the settlement agreement was binding on the parties.  <u>D.R. v. M.R.</u>, 838 F. Supp. at 195.  It also held that, if the contract was to be enforced as binding, the terms of the agreement were "clear and unambiguous."  <u>Id.</u> at 190.  Under the agreement and as a matter of law, for the 1992-93 school year, the Board was responsible for 90% of any increase in the cost of services provided during the 1991-92 school year.  The additional services of personal aides were not provided during the 1991-92 term.  Nor

---

[2]  We emphasize again, however, that in other cases where different facts are at issue, compelling public policy reasons may require a different conclusion.

was the cost of personal aides contemplated by the parties in negotiating the agreement. Thus, the district court held that, if enforced, the contract clearly required that D.R.'s parents pay the cost of the aides' services provided during the 1992-93 school year.

We agree that this is the proper reading of the settlement. Because we conclude that D.R.'s circumstances have not changed and that the settlement agreement is therefore binding on the parties, we hold that the district court reading of the "clear and unambiguous" terms of the agreement applies. The Board is not liable for the cost of the personal aides provided for D.R. during the 1992-93 term. As a consequence, it is not necessary for us to remand the case for the district court's determination.[3]

Finally, it is apparent that the motion filed by D.R.'s parents seeking attorneys' fees and costs as prevailing parties

---

[3] Unlike the situation in Miller Tabak Hirsch v. Commissioner of Internal Revenue, 101 F.3d7 (2d Cir. 1996), cited by the dissent, there is no contention here that the settlement agreement violated federal law when it was executed. The issue before the district court was change of circumstances; if D.R.'s circumstances had not changed, the agreement would be valid. Moreover, the settlement here resolved the dispute between the parties of whether D.R. required residential or day care. The fact that the Board ceded its position that day care was adequate under IDEA by agreeing to a fixed amount of residential care does not mean that the Board was not providing funding that was sufficient to furnish day care for D.R. that would satisfy IDEA. If this type of settlement is not permitted, we will deprive educators of needed room to compromise in resolving IDEA disputes.

13

must fail.  "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 112 (1992); see also Wheeler v. Towanda Area School District, 950 F.2d 128, 131 (3d Cir. 1991); E.M. v. Millville Bd. of Educ., 849 F. Supp. 312, 316 (D.N.J. 1994).  D.R.'s parents have not prevailed on their claim, nor have they obtained the relief they sought.  They are thus not entitled to an award of attorneys' fees or costs under § 1415 of IDEA.  20 U.S.C. § 1415(e)(4)(B).                              III.

For the above reasons, we will reverse the district court's order, and we will grant summary judgment in favor of the appellant.

SCIRICA, Circuit Judge, Dissenting.

I respectfully dissent.

Both the administrative law judge and the district court found that one-on-one assistance was "educationally necessary" for D.R.'s development.  Although the ALJ found D.R.'s personal circumstances had not changed, the district court reversed, holding the settlement could not satisfy IDEA.

Whether or not the change in Benedictine's funding policy should constitute a "change in circumstances" necessitating revision of the original agreement, Benedictine's

14

refusal to afford the same personal care for the same tuition charge meant D.R. no longer could receive the requisite amount of care contemplated under the settlement agreement.

The district court held that IDEA creates certain rights to educational assistance that cannot be waived by the guardians of a handicapped child and certain duties that cannot be bargained away by school boards.[4]  I agree and I would affirm the judgment of the district court.

---

[4] A settlement agreement that violates a federal public policy or federal statute may be invalidated.  Miller Tabak Hirsch & Co. v. Commissioner of Internal Revenue, 101 F.3d 7, 10 (2d Cir. 1996).  Because the state of New Jersey receives IDEA federal grant funds it must provide its handicapped citizens with the requisite educational assistance under the Act.  See Bd. of Ed. of East Windsor Regional Sch. Dist. v. Diamond, 808 F.2d 987, 991 (3d Cir. 1986); Equal Employment Opportunity Commission v. Astra USA, Inc., 94 F.3d 738, 744–45 (1st Cir. 1996).