**MARGARET GOVIA, Plaintiff**
**v.**
**AUSTIN BURNETT, Defendant**

Civil No. 685/1998

Territorial Court for the Virgin Islands

Division of St. Thomas and St. John

May 5, 2003

CLIVE RIVERS, ESQ., St. Thomas, U.S. Virgin Islands, *Attorney for Plaintiff*

JOHN L. MADURO, ESQ., St. Thomas, U.S. Virgin Islands, *Attorney for Defendant*

SWAN, *Judge*

## MEMORANDUM OPINION

### (May 5, 2003)

Before the Court is Plaintiff's Motion to Set Aside A Mediated Agreement or, in the Alternative, to Reduce the Agreement to a Judgment. For the reasons that follow, Plaintiff's Motion To Set Aside The Mediated Agreement will be denied and the Motion To Reduce The Agreement To A Judgment will be granted.

Pursuant to the Court's Order, the parties conducted mediation, which resulted in a mediated agreement. Subsequently, Plaintiff refused to comply with the terms of the mediated agreement. Explaining the reason for her refusal, Plaintiff asserts that when she signed the mediated agreement, she was unaware of its terms, even though she was present with her counsel at the mediation. Importantly, both parties and their counsel signed the mediated agreement which is entitled "Stipulation."[1]

Plaintiff further asserts that if the Court determines that the mediated agreement is binding on the parties, the Court should reduce the agreement to a judgment, because the Defendant has failed to pay any of the installment payments mandated by the terms of parties' agreement.[2] Defendant responded to Plaintiff's motion, contending that because the mediated agreement is binding upon both parties, the Court should enforce it.

## I. PROCEDURAL BACKGROUND

Margaret Govia ("Plaintiff") and Austin Burnett ("Defendant") were friends when Defendant asked Plaintiff to financially assist him in paying his mortgage arrears, which had accumulated on the mortgage on his property, namely: Parcel No. 200-6B Estate Altona & Welgunst, Kronprindsen Quarter, Charlotte Amalie, St. Thomas, Virgin Islands.

---

[1] One can easily discern from the parties' filings that the Stipulation is the mediated agreement, which was attached as Plaintiff's exhibit I to the Plaintiff's filings.

[2] Plaintiff was dissatisfied with the installment payment provision of the Stipulation, which stated that "Plaintiff hereby gives notice of its acceptance of the amount to settle all said issues under the complaint for the sum of $49,550. The Defendant has agreed to pay said sum upon an initial lump sum payment of $25,000, to be paid at closing from a loan he secures through his bank and the remaining $24,550 to be paid in installments of no less than $150.00 per month until said amount is fully paid to settle this matter."

Essentially, Defendant asked Plaintiff for Forty-Five Thousand Dollars ($45,000.00) to pay his mortgage arrearage in exchange for Defendant's alleged promise to make Plaintiff a joint owner of the same property.[3] After Defendant received the Forty-Five Thousand Dollars ($45,000) from Plaintiff, Defendant, at some subsequent time, informed Plaintiff that he was financially unable to repay the $45,000.00. Additionally, Defendant reneged on the alleged promise to make Plaintiff a joint owner of his property. Therefore, Plaintiff demanded repayment of her Forty-Five Thousand Dollars ($45,000.00). Despite the demands, Defendant failed or refused to recompense Plaintiff. Thus, Plaintiff promptly filed this suit. Plaintiff's suit against Defendant asserts an action for restitution, intentional infliction of emotional distress, fraud and damages. Plaintiff further alleges that Defendant, through deception, dupery, fraud and deceit, induced her to give him Forty-Five Thousand Dollars ($45,000) to pay the then accumulating arrearages on his mortgage.

On March 29, 1999, the Court ordered this case to mediation, which was held on November 11, 1999. Both parties were present at the mediation, with their respective attorneys. Unable to reach an agreement, the parties recessed the matter for further mediation. Another mediated session was held on March 31, 2000, at which time the parties, with the assistance of their respective attorneys, consummated an agreement. On April 19, 2000, the Mediator submitted a mediation report to the Court, informing that the parties will submit a Stipulation Agreement and/or Notice of Dismissal. Based upon the mediation report informing that mediation was successful, the Honorable Soyara Diase entered an April 28, 2000 Order dismissing this case with prejudice. The Court, however, retained jurisdiction for sixty (60) days to reinstate the case, if the terms of the agreement had not been satisfied. Although both parties and their respective attorneys signed the mediated agreement on March 31, 2000, the agreement was never filed with the Court.[4]

Subsequently, a series of letters were exchanged between the parties, with Plaintiff's letters elucidating her dissatisfaction with the terms of the

---

[3] This agreement was never reduced to writing.

[4] In Pl.'s Mem. of Law to Pl's Mot. To Set Aside Mediation Agreement or In the Alternative Reduce the Mediation Order To Judgment, Plaintiff included the Stipulation signed by both parties and their attorneys as Exhibit 1.

mediation agreement. Plaintiff's attorney, Jacqueline Drew, ("Attorney Drew"), wrote an April 19, 2000 letter to the mediator, Archie Jennings, Esquire informing him that Plaintiff was dissatisfied with the terms of the mediation agreement and that she was claiming to have been unaware of the terms of the agreement when she signed it.[5] In another letter of the same date, Attorney Drew informed Plaintiff that she is withdrawing as her counsel and recommended that Plaintiff immediately retrieve her file from Drew's office. Attorney Drew reminded Plaintiff that she was present at the mediation and that Drew had explained the terms of the mediated agreement to her. Attorney Drew further reminded Plaintiff that during the mediation, Plaintiff never registered or verbalized any objection to the terms of the mediated agreement. Lastly, Attorney Drew asserts that Plaintiff had voluntarily signed the agreement with full understanding of its terms.

On July 28, 2000, Attorney Clive Rivers, who had earlier filed a Notice of Appearance on behalf of the Plaintiff, filed a Motion To Reconsider/Motion To Reopen the case, which this Court assumes is filed pursuant to FED. R. CIV. P. 60(b)(6).[6] In support of the motion to

---

[5] The letter stated that:

> On April 19, 2000, I conferred with Margaret Govia, who informed me that she is not satisfied with the mediation agreement and intends to pursue this matter with another attorney. On at least two prior occasions, Ms. Govia indicated to me that she was having second thoughts, but today she explicitly stated that she was not satisfied with the agreement. Please note that I did inform you informally that Ms. Govia was having second thoughts about this agreement. Ms. Govia stated that she did not read the settlement agreement and had no knowledge as to what she was signing. Specifically, she said that neither you nor I informed her as to the contents of the agreement.

[6] The relevant rule reads: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could have not been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment ... This rule does not limit the power of a court to entertain an

239

reconsider, Plaintiff contends that she signed the mediated agreement without knowing the terms of the agreement,[7] and that Plaintiff and her attorney only became aware of the April 28, 2000 Court Order after the sixty (60) day jurisdictional period in Judge Diase's order had elapsed. On September 1, 2000, Defendant filed his opposition to Plaintiff's motion, urging the Court to deny Plaintiff's motion, because it was untimely or filed beyond the sixty-day jurisdictional period.[8] Therefore, Defendant concluded that the Court lacks jurisdiction to decide Plaintiff's motion.

On December 28, 2001, a hearing was held on Plaintiff's Motion To Reopen. In response to the Plaintiff's request for leave of Court to amend her Motion To Reconsider/Motion To Reopen, this Court instructed Plaintiff to file all her motions that she wishes the Court to consider, with supporting memoranda, within forty-five (45) days after January 1, 2002. Defendant, likewise, was instructed to file his responses to Plaintiff's motions within fifteen (15) days, after receiving Plaintiff's motions.

## II. DISCUSSION

On February 15, 2002, Plaintiff filed a Motion to Set Aside Mediation Agreement or in the Alternative to Reduce the Mediation Order to Judgment. Importantly, in this motion Plaintiff contends that if the Defendant is correct that the mediated agreement is binding and enforceable, Defendant has breached the agreement by failing to make any of the payments now due under the terms of the same agreement. Thus, Plaintiff avers that she is entitled to contract damages, restitution or specific performance as a remedy for Defendant's breach of the parties' agreement.[9] On April 2, 2002, Defendant filed his opposition to

---

independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon court."

[7] Specifically, Plaintiff argues that she was oblivious to the term of the agreement, which stipulated that the Defendant would pay restitution over a period of fifteen years as stated in the signed Stipulation. The terms of the agreement, therefore, will place the plaintiff into a financial hardship.

[8] Defendant argues that Plaintiff should have filed the Stipulation agreement before the sixty-day jurisdictional requirement expired.

[9] This Court interprets Plaintiff's argument to state that she maintains that she was unaware of the terms of the settlement agreement. However, if the Court finds that

Plaintiff's motions,[10] asserting that the mediated agreement is binding and enforceable. Defendant further reminded Plaintiff that she was present with her counsel at the mediation and had failed to register any objections to the terms of the mediated agreement.[11] Defendant likewise reminded Plaintiff that the Court has already dismissed the case with prejudice.

■■ The pivotal issue is whether the parties' mediated agreement, which was mediated by the parties with the assistance and guidance of the parties' attorneys, and signed by the parties and their attorneys, is an enforceable binding contract between the parties. Essentially, a mediated agreement is a settlement agreement. A trial court has jurisdiction to enforce settlement agreements. *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993). Therefore, this Court has jurisdiction over the mediated agreement.

## A. The Mediated Agreement Is A Binding And Enforceable Contract.

■ The United States Third Circuit Court of Appeals has opined that settlement agreements are contracts and, therefore, basic contract principles are applied to them, unless precluded by law. *Harris v. Dept. of Veterans Affairs*, 142 F.3d 1463, 1467 (3d Cir. 1998). The Appellate Court also states that settlement agreements should be treated as contracts. *Halderman v. Pennhurst State Sch. & Hosp.*, 901 F.2d 311, 318 (3d Cir. 1990). The Appellate Court also held that when parties enter into a settlement agreement, they enter into a contract. *D.R., by his parents and guardians M.R. and B.R. v. East Brunswick Bd. of Educ.*, 109 F.3d 896, 901 (3d Cir. 1997).

■■ For a settlement agreement to be enforceable and binding, there must be mutual assent between the parties. *Stewart v. Professional Computer Centers, Inc.*, 148 F.3d 937, 939 (8th Cir. 1998); *see also*, E.

---

settlement agreement is enforceable, Plaintiff requests that the agreement should be set aside because the defendant breached the contract.

[10] Defendant responded to Plaintiff's July 28, 2000 Motion to Reconsider/Motion to Reopen on April 2, 2002. On the same date, Defendant opposed Plaintiff's Motion to Set Aside Mediation Agreement or in the Alternative to Reduce the Mediation Order to Judgment.

[11] Defendant also states that Plaintiff has been living on the property failing to pay rent, water or electricity although this condition is not mentioned in the settlement agreement.

241

ALLAN FARNSWORTH, CONTRACTS § 3.6 (2d ed. 1990); RESTATEMENT (SECOND) CONTRACTS § 24. Mutual assent simply implies that the parties agreed to the contract. This theory of assent does not, however, address or consider whether the parties understand the legal consequences of their actions. FARNSWORTH, *supra*, at § 3.6. The parties are reminded that they willingly and voluntarily entered into the mediation agreement. The agreement was consummated in good faith and with the guidance and advise of their attorneys. When the parties attended the mediation, they knew the purpose, intent, reason, and objective of the mediation. *See, Isidor Paiewonsky Assoc. v. Sharp Properties*, 761 F. Supp. 1231, 1233, 26 V.I. 228 (D.C.V.I. 1991). Consequently, there was mutual assent between the parties when they executed the mediated agreement. Moreover, when they executed the agreement, the parties were charged with a duty of good faith and fair dealing in its enforcement. RESTATEMENT (SECOND) CONTRACTS § 205. *See, Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 170 (3d Cir. 2001).

■ During the mediation, Plaintiff never expressed or articulated any dissatisfaction, disagreement or objection to the terms of the settlement agreement. Therefore, she signed the agreement without any reservations or compunction. Importantly, Plaintiff cannot unilaterally modify the terms of the mediated agreement, because she now considers the terms disadvantageous or unsatisfactory. On that issue, the Court's opinion in *Wilson v. Wilson*, 46 F.3d 660, 665-666 (7th Cir. 1995) is instructive and illuminating. The Court held that the defendants cannot summarily change their minds at the "eleventh hour" after reaching a binding settlement agreement. *Id.* at 665-666. This Court agrees. Accordingly, the Court concludes that when the parties signed the mediated agreement, the agreement became a binding and enforceable contract.

## B. The Mediated Agreement Is A Valid Contract, Absent Fraud, Coercion, Mutual Mistake, Duress, Deceit, Or Misrepresentation.

■ Because the parties' mediated agreement is a binding and enforceable contract, only the existence of fraud, mutual mistake, duress, deceit, misrepresentation, or another compelling legal basis will merit the Court reconsidering or setting aside an otherwise valid settlement agreement. *See, Brown v. County of Genesse*, 872 F.2d 169, 174 (6th Cir. 1989). Plaintiff has failed to offer to this Court an iota or scintilla of

evidence of fraud, deceit, coercion, misrepresentation, duress or mutual mistake as a possible justification for the Court to nullify the mediated agreement. Therefore, this Court concludes that there is no legitimate or equitable basis to set aside the agreement. Consequently, Plaintiff's motion will be denied.

Additionally, had Plaintiff's attorney filed a timely FED. R. CIV. P. 60 (b)(6) motion, the mediated agreement would not have been set aside. In *Whitaker v. Associated Credit Services, Inc.*, 946 F.2d 1222, 1224 (6th Cir. 1991), the Court found that mistakes made as a result of excusable neglect may be set aside, if it would be equitable to do so. *See also*, 11 CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2858 (1973). The essence of Plaintiff's current dissatisfaction with the mediated agreement does not constitute excusable neglect nor an equitable basis for vacating a consent judgment under Rule 60(b)(6). (*Whitaker*, 946 F.2d at 1224 (quoting *Mallory v. Eyrich*, 922 F.2d 1273 at 1280)). Essentially, Plaintiff has simply reevaluated the terms of the settlement agreement, found them to be unsatisfactory and is surreptitiously attempting to utilize Rule 60(b)(6) as a vehicle to rescind the agreement.[12]

## C. Public Policy Favors The Enforcement Of Mediated Agreements.

A mediated agreement and a settlement agreement are of the same character and are synonymous with each other. Their purposes have the same end result in that they are agreements, which resolve the legal controversy between the parties, and simultaneously terminate the lawsuit. The United States Third Circuit Court of Appeals has opined that public policy favors the enforcement of lawful settlement agreements. *Farris v. JC Penny*, 176 F.3d 706, 711 (3d Cir. 1999). *See also*, *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 213-215, 128 L. Ed. 2d 148, 114 S. Ct. 1461 (1994). Additionally, settlements are encouraged to promote the resolution of disputes and reduce the plethora of litigation in the Courts. *East Brunswick Board of Education*, 109 F.3d 896 at 901. However, Courts discourage litigants from attempting to void settlements resulting from mediation. *Id.* The parties are reminded that mediation is a

---

[12] This Court will not consider any breach of contract arguments here because Plaintiff failed to make similar claims in her FED. R. CIV. P. 60(b) motion.

cogent and legitimate alternative to litigation, and serves its intended purpose in that it expedites the resolution of court cases.

Likewise, mediation has gained wide acceptance and approval in the legal community, because it significantly reduces the costs of litigation by eliminating protracted lawsuits. Accordingly, the following is enlightening:

> [a] party enters a settlement agreement, at least in part, to avoid unpredictable costs of litigation in favor of agreeing to known costs. Government entities have additional interests in settling disputes in order to increase the predictability of costs for budgetary purposes ... Settlement agreements are encouraged as a matter of public policy because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the courts.

*Id.*

Similarly, "... to void settlement agreements when they become unpalatable would work a significant deterrence contrary to the federal policy of encouraging settlement agreements." *Id.* Equally, the United States Ninth Circuit Court of Appeals has held that when a plaintiff agrees to a settlement agreement in open court, it becomes binding and enforceable because "[t]he courts spend enough time on the merits of litigation; we need not (and therefore ought not) open the flood gates to this kind of needless satellite litigation." *Doi v. Halekulani Corporation*, 276 F.3d 1131, 1141 (9th Cir. 2002). Moreover, "[w]hile the possibility that parties will fail to reach agreement remains ever present, the boon of settlement can be worth the risk." *In re Atlantic Pipe Corp.*, 304 F.3d 135, 144 (1st Cir. 2002). The Court further stated that "[a]gainst this backdrop, mediation holds out the dual prospect of advantaging the litigants and conserving scarce judicial resources." *Id.* at 145. The Court agrees. Accordingly, the Court concludes that it must deny Plaintiff's motion to set aside the mediated agreement, which is based on Plaintiff's recently concocted dissatisfaction with the terms of the agreement.

There is another compelling reason for the Court's decision. If this Court decided otherwise, it would establish a disconcerting precedent, allowing litigants to frustrate the mediation process, based upon a specious and non-meritorious basis for doing so.

■ Rule 40 of the Territorial Court Rules provides for mediation. Considering the intent, purpose and objective of Rule 40(f)(2) of the Rules of the Territorial Court,[13] the Court will validate the parties' agreement and reduce it to a consent judgment. A consent judgment would assist both parties in enforcing the terms of the agreement through the Court, if either party fails to comply with its terms. "A trial court retains jurisdiction to enforce consent decrees." *Floyd v. Ortiz*, 300 F.3d 1223, 1226 (10th Cir. 2002). *See, Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 286 (D.C. Cir. 1993).

> A consent [judgment or] decree is a hybrid of a contract and a court order. A decree embodies the agreement of the parties and as such is in some respects contractual in nature; however, a decree is also in the form of a judicial order that the parties expect will be subject to the rules generally applicable to other judgments and orders.

*Holland v. New Jersey Dept. of Corrections*, 246 F.3d 267, 276 (3d Cir. 2001).

Because this Court finds that the mediated agreement is binding and enforceable, the agreement will be reduced to a consent judgment.

## III. CONCLUSION

For the reasons stated, Plaintiff's Motion To Set Aside The Mediation Agreement will be denied and her Motion To Reduce The Agreement To A Judgment will be granted. This Court finds that the mediated agreement is a contract voluntarily consummated by the parties, with the assistance and guidance of their attorneys. Also, Plaintiff has failed to provide any equitable or compelling reason to set aside the mediated agreement. Accordingly, the Court holds that in the absence of fraud, duress, deceit, coercion, misrepresentation, mutual mistake or another compelling legal basis, the Court will not set aside an executed mediated agreement, when the parties to the agreement and their respective attorneys participated in the mediation and signed the mediated

---

[13] The relevant rule reads: "[I]f an agreement is reached, it shall be reduced to writing signed by the parties and their counsel, if any. The agreement shall be filed when required by law or by the parties' consent. If the agreement is not filed, a joint stipulation of dismissal or consent judgment shall be filed. By stipulation of the parties, the agreement may be electronically or stenographically recorded. In any event, the transcript may be filed with the Court."

agreement. The Court further holds that a party's personal dissatisfaction with the terms of a mediated agreement that was consummated with the assistance and guidance of legal counsel is an insufficient basis for setting aside the mediated agreement. The mediated agreement, therefore, will be reduced to a consent judgment. An appropriate Order will follow.