

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-2-2004

# H.W. v. Highland Park Bd Ed

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3309

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"H.W. v. Highland Park Bd Ed" (2004). *2004 Decisions.* Paper 343.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/343

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 03-3309

_____

H.W. and J.W. O/B/O A.W., a Minor Child,
                                                Appellees
                        vs.

HIGHLAND PARK BOARD OF EDUCATION,
                                                Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civ. No. 01-cv-05166)
District Judge:   Mary Little Cooper
_____

Argued July 15, 2004
Before:   SLOVITER, BARRY and WEIS, Circuit Judges.

(Filed:   September 2, 2004)
_____

James L. Plosia, Jr., Esquire (ARGUED)
Apruzzese, McDermott, Mastro & Murphy, P.C.
25 Independence Boulevard, P.O. Box 112
Liberty Corner, New Jersey   07938

Attorney for Appellant

Nathan Lewin, Esquire (ARGUED)

1

Alyza D. Lewin, Esquire
Lewin & Lewin, LLP
1828 L Street, N.W., Suite 1000
Washington, D.C.  20036

Michael I. Inzelbuch, Esquire
S.I. Bank & Trust Building
555 Madison Avenue
Lakewood, New Jersey  08701

Attorneys for Appellees

Abba Cohen, Esquire
Agudath Israel of America
1730 Rhode Island Avenue, Suite 504
Washington, D. C.  20036

David Zwiebel, Esquire
Mordechai Biser, Esquire
Agudath Israel of America
42 Broadway, 14th Floor
New York, New York   10004

Yehuda L. Neuberger, Esquire
59 Maiden Lane, Plaza Level
New York, New York   10038

Amicus Curiae Agudath Israel of America In Support of Appellees

_____

OPINION OF THE COURT

WEIS, Circuit Judge.

        This appeal is from the entry of judgment in favor of H.W. and his wife on

a claim for reimbursement of expenses incurred in a unilateral placement of their

daughter, A.W., at a private school for the disabled. Because the facts are well known to the parties and were exhaustingly developed in lengthy administrative proceedings, as well as thoroughly explored in the District Court's opinion, we will refer to them only as necessary to the understanding of the legal issues.

A.W., born on April 28, 1989, had learning difficulties in pre-school and the primary grades. She was classified as perceptually impaired and diagnosed as suffering from Attention Deficit Hyperactivity Disorder, Mixed Adjustment Disorder, Motor Coordination Disorder, and Asperger's Syndrome (a form of autism).

In August 2000, the Highland Park School District proposed a placement for A.W. in the Bartle School. The parents rejected this plan and enrolled their daughter in Sinai Special Needs Institute at the Kushner Hebrew Academy, a private school for the disabled. The Bartle plan called for A.W. to be in a co-ed class of eight students. In addition to Ms. Lois Brown, a teacher who was familiar with Asperger's Syndrome, two para-professionals would be present with the likelihood that a third would be added if A.W. were enrolled.

A.W. would receive one-on-one instruction in language arts, reading and mathematics. She would also receive occupational therapy, speech therapy, and physical therapy. Moreover, the District also expected to develop and implement a behavior modification plan. A.W. would attend mainstream classes with other children in her age group in art, music, physical education, health, as well as lunch and recess.

3

At the Sinai School, A.W. received instruction in mathematics and social studies with five other girls, one of whom had Asperger's Syndrome and the other four of whom had learning disabilities. She also attended a science class with one other girl. The Sinai School had an excellent social skills development department and employed a full-time school psychologist. A.W. attended mainstream lunch and it was planned that she would also attend mainstream physical education and synagogue.

A.W. remained in the Sinai School until the family moved to Israel in 2003. The parents' claim is for their expenditures at the Sinai School for the school years beginning in September 2000, 2001 and 2002.

A very patient ALJ presided over extensive presentation of evidence by two committed and loquacious advocates in the due process administrative proceeding. At the conclusion of the hearings, the ALJ stated, "I find Highland Park's proposed placement of A.W. did not violate IDEA . . . I find all of Highland Park's actions after A.W. enrolled in the Highland Park School District lead to the conclusion that Highland Park would meet its responsibilities to A.W. . . . petitioner did not give Highland Park the opportunity to provide FAPE [free appropriate public education] to A.W."

The plaintiffs appealed to the District Court for the District of New Jersey. After presenting oral arguments on legal issues, the parties stipulated to submit the case on the administrative record with no further evidence.

4

The District Court reviewed the record and wrote a comprehensive opinion, concluding that Sinai was an appropriate placement and that A.W. had shown improvement there. The Court also held that the School District's proposal did not provide an appropriate placement and entered judgment against it.

The District Court's determination rested on three factors:

1. Plaintiffs' experts Trigani and Handleman had "a deeper knowledge of Asperger's Syndrome" than the defendant's expert;

2. The Highland Park Child Study Team of Bartle School had not met with A.W. before deciding on her placement; and

3. Defendant's expert findings based on a 1996 test were inconsistent with those of other examiners.

The District Court held that, even though Sinai was a private parochial school, nevertheless reimbursement to the parents was permissible. We do not reach that issue and intimate no views on it. On appeal, the defendant contends that the District Court erred in considering A.W.'s placement in 1996 and 1997, and failed to give due weight to the ALJ's decision.

Our standard of review is plenary. S.H. v. State-Operated Sch. Dist. of the City of Newark, 336 F.3d 260 (3d Cir. 2003). See also D.R. v. E. Brunswick Bd. of Educ., 109 F.3d 896 (3d Cir. 1997); Carlisle Area Sch. v. Scott P., 62 F.3d 520 (3d Cir. 1995). The District Court's standard of review is described as modified *de novo*. See S.H., 336 F.3d at 269-70.

5

District Courts are to give due weight to the factual findings of an ALJ in IDEA cases. See Board of Education v. Rowley, 458 U.S. 176, 206 (1982); S.H., 336 F.3d at 269-70. We recently had occasion to discuss the appropriate standard.

> [I]f a state administrative agency has heard live testimony and has found the testimony of one witness to be more worthy of belief than the contradictory testimony of another witness, that determination is due special weight. Id.; Carlisle Area School v. Scott P., 62 F.3d 520, 527-29 (3d Cir. 1995). Specifically, this means that a District Court must accept the state agency's credibility determinations "unless the non-testimonial, extrinsic evidence in the record would *justify* a contrary conclusion." Carlisle, 62 F.3d at 529 (emphasis added). In this context the word "justify" demands essentially the same standard of review given to a trial court's findings of fact by a federal appellate court. See Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985).
>
> When a District Court decision in a case such as this is appealed to us, we of course exercise plenary review with respect to the question of whether the District Court applied the correct legal standard, see Polk, 853 F.2d at 181, but we review the District Court's factual findings for clear error. T.R. v. Kingwood Tp. Bd. of Educ., 205 F.3d 572, 576 (3d Cir. 2000). "A finding of fact is clearly erroneous when, after reviewing the evidence, the court of appeals is left with a definite and firm conviction that a mistake has been committed." Oberti, 995 F.2d at 1204 (internal quotation marks omitted). Shore Reg'l High Sch. Bd. of Educ. v. P.S., ___ F.3d ___, at ___ - ___ (3d Cir. 2004).

Where the court does not hear additional evidence, factual support for findings contrary to those of the ALJ must be found in the record. "Moreover, the court must explain why it does not accept the ALJ's findings of fact to avoid the impression that it is substituting its own notions of sound educational policy for those of the agency it reviews." S.H., 336 F.3d at 270.

The issue in the case before us is not determined by comparison between the programs at Highland and Sinai. As we explained in Shore Reg'l High Sch. Bd. of Educ., ___ F.3d at ___ - ___, where "parents seek reimbursement for a unilateral placement, the District Court must first determine whether the IEP afforded the student a FAPE." A comparison between the two programs is irrelevant to the adequacy of the proposed placement under IDEA.

Moreover, the propriety of an IEP must be judged prospectively. See Carlisle Area Sch., 62 F.3d at 530. The IDEA does not require a school district to provide the best possible education, but it must be more than *de minimus*. IDEA demands an Individualized Education Program that will result in some measurable benefit. The benefit must be gauged in relation to the child's potential. Polk v. Central Susquehanna Intermediate Unit 16, 853 F.2d 171 (3d Cir. 1988); see also Carlisle Area Sch., 62 F.3d 520.

The education must be delivered in the least restrictive appropriate environment. See 20 U.S.C. § 1412(a)(5)(A). See also Carlisle Area Sch., 62 F.3d at

7

533. The School District has the burden to prove that its proposed program was appropriate. Oberti v. Bd. of Educ., 995 F.2d 1204 (3d Cir. 1993).

We have pored through the extensive record in this case and it is clear that the District Court diligently reviewed the matter. Nonetheless, despite the competence displayed by the District Court, we have differing views on several significant factors underlying the grant of judgment for the parents.

Although the Court faulted the School Board for preparing a proposal without meeting with A.W., the transcript demonstrates that such a meeting was indeed held in early August 2000. It was part of the process leading to a recommendation for placement of A.W. in September 2000. See J.A. at 730, 746, 1499 & 1500.

The court concluded that the plaintiff's experts, Drs. Trigani and Handleman, had a deeper knowledge of Asperger's Syndrome than Ellyn Atherton, the School District expert. However, Dr. Handleman's testimony did not support A.W.'s position that Highland Park would not provide an appropriate program. In his view, A.W. should not have been moved because she was thriving at Sinai as of October 2000. When questioned directly about whether the Highland Park proposal was appropriate, he said "the issue of assessing whether any program is appropriate is really a non-issue for me." J.A. at 1232.

When asked whether any other consideration made Highland Park inappropriate, Dr. Handleman responded: "[Regression] is the major factor." J.A. at

8

1233. "Movement would not be appropriate for her . . . regardless of . . . what program." J.A. at 1233-34. ". . . the issue of whether or not Highland Park could provide an appropriate program becomes a non-issue at that point, because my strong feeling was that A. should not be moved from her current placement." J.A. at 1240-41.

Dr. Handleman did concede that when he visited the Bartle School Special Education Class in October 2000, he "didn't see anything at that point that would indicate any particular concern." J.A. at 1240. He added that "[i]f it was judged that she was ready for a move, that the Highland Park program or some other program could be appropriate for her." J.A. at 1264. Furthermore, he stated that "[t]here was nothing at that point to suggest that the component [at Bartle] couldn't be enhanced or developed." J.A. at 1265. In sum, Dr. Handleman did not opine that Highland Park's program was inappropriate.

Dr. Trigani's testimony was lengthy, often repetitious, and frequently devoted to conditions at Sinai, an issue not relevant in appraising the program at Highland Park. His objections to the Highland Park program centered on the fact that the class size would be nine, and that he believed that none of the children in that class would be potential friends for A.W. He conceded, however, that the Bartle class would not be above the legal maximum number of students  He noted that "Highland Park is in compliance with the law, but acceptable practice goes far in excess of maximum limits and goes down to one-on-one pretty much." J.A. at 822.

9

Dr. Trigani also was critical of Highland Park's lack of experience in dealing with Asperger's Syndrome children in a self-contained program, lack of success and failure to have a behavioral plan. All of these factors were contradicted by the District's expert.

Defendant's expert Ellyn Atherton has a Masters Degree in speech and language pathology and audiology. She has taught at Highland Park for 24 years, including students who had Asperger's Syndrome. She described the proposed placement in her testimony before the ALJ. At the Bartle school, A.W. would be placed in Lois Brown's special education classroom.

The credibility of the expert witnesses was a matter for determination by the ALJ, who had the opportunity to hear and evaluate their demeanor and persuasiveness. Our study of the transcript and giving due weight to the findings of the ALJ does not lead us to disagree with his determination of the facts and credibility of the witnesses. Moreover, we are impressed with the qualifications of Ms. Lois Brown, who was the teacher assigned by Highland Park to conduct the special education class. She had more than 14 years experience in the field of special education, including Asperger's Syndrome.

Dr. Handleman's fear of regression in the event of transfer, while an obvious concern to the parents, is irrelevant to the legal issue in this case - whether the Highland Park proposal was appropriate under IDEA. Just as comparison with Sinai's

program is not a proper subject for evaluation, the possibility of regression caused by transfer from that school, where the parents unilaterally placed their daughter, has no bearing on the Highland Park program's compliance with IDEA. Although Dr. Trigani favored an all-girl class for A.W., he failed to provide any professional research to support that view as a critical element in the Highland Park plan. In short, the record is devoid of any non-testimonial, extrinsic evidence that would justify a conclusion contrary to the ALJ decision.

It is important to emphasize once again that the ALJ found that, based upon its actions, it was reasonable to presume that Highland Park would meets its obligations to provide an appropriate education to A.W. However, by preemptively placing and continuing the child in classes at Sinai, the parents did not give the school district the opportunity to provide a free and appropriate education.

We conclude, therefore, that the District Court's decision was not supported by the record and, accordingly, the judgment in favor of the parents will be reversed.

11