

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-27-2008

# Muse B. v. Upper Darby Sch Dist

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1739

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Muse B. v. Upper Darby Sch Dist" (2008). *2008 Decisions.* Paper 967.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/967

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-1739
_____

MUSE B., A minor, by his parent, Hanna B.

v.

UPPER DARBY SCHOOL DISTRICT; JOSEPH GALLI,
Individually and in his official capacity as Superintendent,
Upper Darby School District; PATRICIA DENUCCI,
Individually and in her official capacity as Coordinator of
Elementary Special Education, Upper Darby School District,

*Hanna B., Appellant

*(Pursuant to Rule 12(a), F.R.A.P.)
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 06-cv-00343)
District Judge:  Honorable Paul S. Diamond


Submitted Pursuant to Third Circuit LAR 34.1(a)
June 19, 2008

Before: RENDELL, JORDAN and VAN ANTWERPEN, Circuit Judges

(Opinion filed:   June 27, 2008)
_____

OPINION
_____

PER CURIAM

Appellant Hanna B., the parent and natural guardian of Muse B., who has been diagnosed with autism, presented an Administrative Due Process complaint against the Upper Darby School District towards the end of the 2004-05 school year, and the hearing officer found that Muse B. should be placed in his neighborhood school in regular education classes with reading and math supports.[1]  Muse B. was awarded compensatory education for each hour of school from February 18, 2005 through the last day of the 2004-05 school year.  The School District appealed the decision and won; a divided administrative appeals panel decided that Muse B. should remain in the specialized autistic program at his elementary school,[2] and the compensatory education award was reduced by half.

Hanna B. appealed that decision on January 25, 2006 in United States District Court for the Eastern District of Pennsylvania, alleging that the School District and its officials failed to provide Muse B. with a Free and Appropriate Public Education ("FAPE") as required under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401 et seq.[3]  Violations under section 504 of the Rehabilitation Act of 1973, 29

---

[1] Because the parties are familiar with the complete factual and procedural background of this case, we will discuss it only to the extent necessary to our disposition.

[2] At that time, Muse B. was participating in the Autistic Support Program at Primos Elementary School.

[3] The IDEA was renamed the Individuals with Disabilities Education Improvement Act, effective July 1, 2005.

U.S.C. § 794, and the Americans with Disabilities Act, 42 U.S.C. § 12131, also were alleged. Initially, Hanna B. was represented by an attorney from the Public Interest Law Center of Philadelphia, but, because she was dissatisfied with this representation, the District Court appointed Jeffrey Brydzinski, Esquire and Gregory Parks, Esquire to represent her interests.

Negotiations took place, and they resulted in a Consent Decree, which provided for placing Muse B. in the regular third grade at his neighborhood school for the remainder of the 2005-06 school year, with specialized services provided daily. The parties also agreed that the School District would evaluate and modify Muse B.'s Individualized Education Program ("IEP") to afford him a meaningful education, and it awarded 150 hours of compensatory education. The claims against the School District and its officials were to be dismissed with prejudice. The District Court specifically found that the Consent Decree had been negotiated in good faith (Consent Decree, at ¶ C), and the parties were cautioned to read the entire stipulation before signing and agreeing to it. Hanna B. signed the Consent Decree, as did a representative of the School District, and the Consent Decree was approved by the District Court and filed of record as an Order on May 4, 2006. The District Court retained jurisdiction to enforce the terms of the Consent Decree through the 2007-08 school year.

Among other things, the Consent Decree provided for the retention by the School District, at its expense, of an educational consultant with expertise in "inclusion and

modification of the regular education curriculum" for a child with autism. (Consent Decree, at ¶ 3.) If the parties could not agree on a consultant, the District Court would make the final decision. Shortly after the Consent Decree was signed and executed, the parties ran into difficulties reaching an agreement on a consultant and the nature of the consultant's role. Hanna B. wrote to the District Court, seeking to withdraw her consent to the Consent Decree and seeking the withdrawal of her counsel. The Magistrate Judge to whom the case was referred held a conference on June 1, 2006 to discuss the request. Hanna B. was given the option of seeking different counsel, Supp. App. 61, but, in the meantime, an agreement was reached to move ahead in implementing the Consent Decree. The dispute over the consultant and her role in assisting the School District, Hanna B., and the IEP team in making Muse B.'s regular placement at his school work for him and Hanna B. was resolved. Supp. App. 62-63.

The parties next had difficulty in the summer of 2006 in negotiating an IEP, and Hanna B. asked the Magistrate Judge if she could proceed pro se, as she had during administrative proceedings. The Magistrate Judge held another conference on November 30, 2006, and explained the law in effect at the time that parents could not represent their children in IDEA cases in federal court, see Collinsgru v. Palmyra Bd. of Educ., 161 F.3d 225, 231-37 (3d Cir. 1998) (non-attorney parents have no right to represent child under IDEA as IDEA did not create joint rights in parents and child); Fed. R. Civ. Pro. 17(c) (minors precluded from pursuing their own legal actions). Hanna B. expressed her

4

dissatisfaction with the rule, Supp. App. 73, but, nevertheless, tried to clear up communication with her counsel, and appeared to reaffirm her willingness to work under the Consent Decree, Supp. App. 96-99.

This agreement was short-lived. By January 24, 2007, the Magistrate Judge was recommending appointment of a guardian *ad litem,* and Hanna B.'s counsel were seeking to withdraw. After a hearing on the matter, the District Court, in an order entered on February 14, 2007, granted the petition of counsel to withdraw from the case. The court made a finding that Hanna B., as a result of taking irrational and inconsistent positions in her dealings with her attorneys, the School District, and even the court, was hurting her son by making it impossible to implement the Consent Decree. The court appointed Marcie Marino-Romberger, Esquire, to serve as Muse B.'s guardian *ad litem*, and, in doing so, reaffirmed the validity of the Consent Decree and determined that it should be enforced. The court limited Ms. Romberger's role to handling matters relating to implementing and enforcing the Consent Decree, and ordered Ms. Romberger to consult with Hanna B. and keep her advised of all developments in the case.

Hanna B. filed a timely notice of appeal pro se, seeking review of the February 14, 2007 order and challenging the validity of the Consent Decree. In her brief on appeal, she contends that she was coerced into signing the Consent Decree, and that it unfairly benefitted the School District and resulted in an inadequate number of awarded hours of compensatory education. In addition, she contended that she has a right under the IDEA

5

to represent herself in litigation in the federal courts.[4]

We will affirm. We have jurisdiction under 28 U.S.C. § 1291. As the issues raised on appeal are purely legal, our review is plenary. See Acands, Inc. v. Travelers Cas. & Sur. Co., 435 F.3d 252, 258 (3d Cir. 2006). We have carefully reviewed the briefs and appendices, and considered the parties' arguments, and conclude that the Consent Decree was voluntarily and willingly entered into by Hanna B., and is therefore a binding contract between the parties and should be enforced as written. See D.R. by M.R. v. East Brunswick Bd. of Educ., 109 F.3d 896, 901 (3d Cir. 1997). Settlement agreements are encouraged as a matter of public policy. Id. The Consent Decree was negotiated by experienced counsel, was favorable to Hanna B. and her son insofar as it provided for placing Muse B. in the regular third grade at his neighborhood school, with specialized services provided daily. Muse B.'s personal circumstances did not change during the relevant time period, and thus enforcing the Consent Decree would not violate public policy, id. at 901 & n.2. We see no showing of duress on this record and there is no indication that Hanna B. was threatened by either the School District or her counsel. She had full and complete input into the agreement. The fact that she later judged the Consent Decree to be inadequate does not render it invalid. Id. at 901. The Consent Decree is not

---

[4] While this appeal was pending, the District Court ordered the School District to pay for the services of the guardian *ad litem* at a rate of $100.00 an hour up to a total of $10,000. We dispose of Hanna B.'s appeal of that decision, docketed at C.A. No. 07-4111, in a separate Opinion.

6

void because she settled for less than she later believed the law provides.

In addition, the District Court's decision to appoint a guardian *ad litem* was proper under the law in effect in this circuit at that time, Collinsgru, 161 F.3d at 231-37; Fed. R. Civ. Pro. 17(c). On May 21, 2007, while this case was pending on appeal, the Supreme Court held in Winkelman v. Parma City Sch. Dist., --- U.S. ----, 127 S. Ct. 1994 (2007), that, because parents have substantive rights under the IDEA which are not limited to procedural and reimbursement-related matters, and which they may enforce by prosecuting actions on their own behalf, the circuit court in that case erred when it dismissed the parents' appeal for lack of counsel. The Supreme Court reasoned that the IDEA requires school districts to develop an IEP for each child with a disability, see 20 U.S.C. §§ 1412(a)(4), 1414(d), with parents playing a significant role in this process. Id. at 2000 (citing Schaffer v. Weast, 546 U.S. 49, 53 (2005)). Furthermore, "parents enjoy enforceable rights at the administrative stage, and it would be inconsistent with the statutory scheme to bar them from continuing to assert these rights in federal court." Id. at 2002. The Court expressly reserved the question whether the IDEA entitles parents to litigate their child's claims pro se. Id. at 2007.

Accordingly, under Winkelman, Hanna B. may henceforth conduct litigation matters pro se in federal court relating to her rights under the IDEA to challenge the substantive adequacy of Muse B.'s FAPE. In fact, she has done so in this appeal. However, we will not reverse that part of the District Court's order appointing a guardian

*ad litem*. Hanna B. brought this case on behalf of Muse B. and not herself. Tthis case, in contrast to Winkelman, involves enforcement of a Consent Decree entered into before Winkelman was decided and not a threshold action, and the District Court specifically found that Hanna B. demonstrated an inability to work effectively with the School District and the District Court in implementing a Consent Decree she voluntarily entered into, and which provided significant benefits for her son. Cf. McKaskle v. Wiggins, 465 U.S. 168, 184 (1984) (where Sixth Amendment rights attach, appointment of standby counsel may be made even over objection of defendant "to relieve the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals"). Importantly, the Supreme Court's subsequent decision in Winkelman does not render Hanna B.'s stipulations and consent to the Consent Decree unknowing and involuntary. The Consent Decree was knowingly and voluntarily entered into by Hanna B, and she did not seek to represent herself until after the Consent Decree was approved by the District Court. (Appellant's Informal Brief, at 2.)

We will affirm all orders of the District Court entered in this case. Appellant's motion for leave to file a supplemental appendix, which also is construed as a motion for leave to expand the record, is granted. Appellant's motion to stay the District Court proceedings, submitted in both appeals (Nos. 07-1739 & 07-4111), is denied.

8