

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-19-2006

# Acands Inc v. Travelers Cslty

Precedential or Non-Precedential: Precedential

Docket No. 04-3926

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Acands Inc v. Travelers Cslty" (2006). *2006 Decisions.* Paper 1666.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1666

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 04-3926 and 04-3929
_____

ACANDS, INC.,

Appellant

v.

TRAVELERS CASUALTY
AND SURETY COMPANY


_____


ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA
District Court Judge: Honorable Petrese B. Tucker
(D.C. Nos. 00-cv-04633 & 03-mc-00222)
_____


Argued: July 11, 2005

Before:  ALITO and BECKER, Circuit Judges, SHADUR
District Judge*


(Opinion Filed: January 19, 2006)


_____


* Honorable Milton I. Shadur, United States District Judge for
the Northern District of Illinois, sitting by designation

John E. Heintz (argued)
David B. Killalea
Donna L. Wilson
Marla H. Kanemitsu
Glenn Schlactus
Gilbert Heintz & Randolph LLP
1100 New York Avenue, NW
Washington, DC 20005

Laura Davis Jones
Curtis A. Hehn
David W. Carickhoff, Jr.
Pachulski, Stang, Ziehl, Young,
Jones & Weintraub PC
919 North Market Street
Wilmington, DE 19801

*Counsel for Appellant*

Barry R. Ostrager (argued)
Mary Beth Forshaw
Bryce L. Friedman
Simpson, Thatcher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017

Samuel J. Arena, Jr.
Stradley, Ronon, Stevens & Young LLP
2600 One Commerce Square
Philadelphia, PA  19103

*Counsel for Appellee*

_____

OPINION OF THE COURT
_____

ALITO, <u>Circuit Judge</u>:

This case involves the applicability of the Bankruptcy

2

Code's automatic stay provision, 11 U.S.C. § 362(a), to an arbitration panel's resolution of an insurance coverage dispute. We hold that the arbitration proceeding became subject to the automatic stay after Travelers Casualty ("Travelers") submitted arguments supporting an award against the debtor ACandS, and that the panel's award granting Travelers affirmative relief violated the automatic stay by diminishing the bankruptcy estate. We therefore reverse the order of the District Court.

I.

For decades, ACandS, formerly Armstrong Contracting and Supply and now a subsidiary of Irex Corporation, was one of the nation's largest installers of asbestos insulation. Since the early 1970's, the company has been embroiled in asbestos litigation. On September 16, 2002, after selling many of its assets to Irex, ACandS filed for bankruptcy and began to devote its full attention and resources to the issues surrounding the asbestos claims and related insurance matters. See In re ACandS, Inc., 311 B.R. 36 (Bankr. D. Del. 2004). This appeal combines two related disputes arising out of the same set of insurance policies issued to ACandS between 1976 and 1979 by Travelers' predecessor, the Aetna Casualty & Surety Co.

Each of the four identical policies provides two types of coverage: broad coverage for operations claims and more limited coverage for products claims. The products coverage in each policy was capped by a $1 million per occurrence limit and a $1 million aggregate limit. ACandS does not dispute that the coverage provided for products claims has been exhausted. The operations coverage is limited by a $1 million per occurrence limit but has no aggregate cap, meaning that Travelers' exposure to asbestos claims arising from ACandS's operations during the years 1976-79 was potentially unlimited. The present dispute turns on the classification of products versus operations claims and a disagreement over whether all of ACandS's asbestos operations can be considered a single occurrence.

In 1988, seeking to avoid the cost and difficulty of classifying large pools of claims, the parties reached an agreement (the "Letter Agreement") allocating set percentages of asbestos

3

claims to either products or operations. The Letter Agreement initially allocated 55% of the claims to products and the remaining 45% to operations. Because of the aggregate limit on products coverage, Travelers remained liable only for the 45% of claims allocated to operations after the company paid the first $1 million of products claims under each policy. The Letter Agreement also established a three-step process for changing the allocation. First, after two years had passed and at any time thereafter, either party could make a demand on the other for a change in the allocation. Upon the making of the demand, both parties were to conduct a "claims study" in order to determine the proper allocation of claims. If the parties failed to reach agreement on a new allocation, the parties were to submit to non-binding dispute resolution overseen by a neutral mediator. Finally, if the mediation failed, the parties agreed to submit to binding arbitration. In the arbitration, the party seeking the adjustment of the allocation bore the burden of establishing that the existing allocation should be changed.

Both parties quickly explored ways of modifying the bargain. In 2000, Travelers sought to limit its exposure to operations claims by informing ACandS that it would treat all of the operations claims as arising out of the same occurrence (ACandS's use of asbestos), thereby subjecting the claims to the $1 million per occurrence limit. ACandS filed a motion for declaratory judgment in the District Court for the Eastern District of Pennsylvania seeking to have each claim recognized as a separate occurrence ("Number of Occurrences Action"). See JA6-1438 (Complaint, filed September 12, 2000). On November 8, 2000, the District Court granted a joint motion for a stay pending mediation and arbitration. JA6-1455 (Order, filed November 8, 2000). It is this action that the District Court dismissed as moot in the order now on appeal.

Following a different track, ACandS sought to increase its potential recovery under the policies by submitting a demand seeking an increase in the allocation of claims to operations. On January, 31, 2001, the company filed a formal demand pursuant to the 1988 Letter Agreement. Although the demand did not specify the desired reallocation, it stated that the allocation to operations should approach 100%, and acknowledged Travelers' position "that all of the asbestos bodily injury claims pending against

4

ACandS are [products] claims." Although the Letter Agreement contemplates a collaborative approach to reallocation, ACandS did not invite Travelers to participate in the claims study it conducted in 2000.[1] No agreement was reached regarding reallocation, and a mediation was held in August 2001 under the direction of Professor James J. White. After mediation failed to resolve the dispute, the parties proceeded to arbitration. The panel instructed both parties to submit statements of their position. See JA2-467 (Statement of Position of ACandS, Inc., submitted July 31, 2002); JA2-505 (Travelers Casualty and Surety Company's Statement of the Case, submitted August 6, 2002). ACandS's statement largely tracks its demand letter. Travelers' statement says that it would "demonstrate during this proceeding [that] the correct allocation . . . would allocate no claim payments to non-products coverage." JA2-506.

In arguments submitted to the panel, the parties presented conflicting definitions of "operations claims." The arbitration panel agreed with Travelers' interpretation that operations claims encompassed only those claims arising from asbestos exposure during the policy period. JA2-531 (Arbitration Award, filed July 31, 2003). The panel found, as a matter of fact, that ACandS had ceased manufacturing and installing asbestos in 1974.[2] The Panel concluded that any claim arising during the policy period was necessarily a products claim and therefore allocated 100% of the

---

[1] In a collateral proceeding not directly relevant to this appeal Travelers sought to forestall ACandS's resort to the Letter Agreement's dispute resolution process. See JA2-423 (Complaint, filed February 15, 2001). Travelers' argument was that it could not be required to arbitrate the allocation dispute because ACandS failed to satisfy the prerequisites to arbitration as set forth in the Letter Agreement, primarily the requirement that there be a joint claims study. The Connecticut District Court denied a preliminary injunction and later stayed the action pending the outcome of the arbitration. See JA4-1018 (Order, filed October 16, 2001).

[2] Any challenge to this finding was waived when ACandS failed to raise it before the District Court. See JA2-374 (ACandS's motion to vacate, filed October 30, 2003).

claims to the products coverage.

After the arbitration panel was constituted, but before the award was issued, ACandS settled a raft of asbestos claims, totaling more than $2.6 billion. Shortly thereafter, the company filed for Chapter 11 bankruptcy in the District of Delaware. JA4-1050 (Bankruptcy filing, September 16, 2002). The Bankruptcy Court refused to confirm the reorganization plan because it treated similarly situated claimants differently based on the order in which they filed their claims. In re ACandS, 311 B.R. at 43. As a result, the company remains in receivership, and the bulk of the settled claims persist in a state of limbo.

ACandS filed a motion in the District Court for the Eastern District of Pennsylvania, seeking to have the arbitration award vacated. The District Court denied the motion and affirmed the arbitration award. The District Court also dismissed the Number of Occurrences Action on the ground that the award's finding that no claims arose from operations rendered the question presented moot. The two matters were joined for the purposes of this appeal.

II.

ACandS's challenge to the validity of the arbitration award raises three issues related to the panel's decision to grant Travelers affirmative relief by revising the allocation of operations claims to zero: (1) whether the panel exceeded its authority by granting Travelers affirmative relief despite Travelers' failure to file a formal demand, (2) whether the relief granted Travelers violated the Bankruptcy Act's automatic stay provision in 11 U.S.C. § 362, and (3) whether ACandS was prejudiced by inadequate notice regarding Travelers' intent to seek affirmative relief in the arbitration proceeding. Because we hold that the proceeding and award violated the automatic stay, it is unnecessary to address the remaining issues. Because the award must be vacated, the allocation of claims under the Letter Agreement remains at 45% operations and 55% products. Accordingly, ACandS's action seeking a declaratory judgment regarding the number of occurrences is not moot.

A.

6

The District Court's determination that the award did not violate the Bankruptcy Code's automatic stay provision is a purely legal question subject to plenary review. In reviewing a District Court decision concerning the validity of an arbitration award, our assessment of the arbitration panel's actions is governed by the same standard that governed the District Court's review. Metromedia Energy, Inc. v. Enserch Energy Servs., Inc., 409 F.3d 574, 578 (3d Cir. 2005). An arbitration award will be enforced if its form can be rationally derived from either the agreement between the parties or the parties' submissions to the arbitrators and the terms of the arbitral award are not completely irrational. Mut.Fire, Marine & Inland Ins. Co. v. Norad Reins. Co., 868 F.2d 52, 56 (3d Cir. 1989); see also Swift Indus., Inc. v. Botany Indus., Inc., 466 F.2d 1125, 1131 (3d Cir. 1972); Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1128 (3d Cir. 1969).

A long-standing exception to this general rule provides that courts may refuse to enforce arbitration awards that violate well-defined public policy as embodied by federal law. See Exxon Shipping Co. v. Exxon Seamen's Union, 11 F.3d 1189 (3d Cir. 1994) (vacating labor arbitration award that required the reinstatement of an able bodied seaman who was found to be highly intoxicated while on duty). We hold that the automatic stay provision of the Bankruptcy Act promotes a public policy sufficient to preclude enforcement of an award that violates its terms or interferes with its purposes. See In re Cavanaugh, 271 B.R. 414, 424 (Bankr. D.Mass. 2001) ("[T]he automatic stay is the single most important protection afforded to debtors by the Bankruptcy Code."); see also Exxon Shipping, 11 F.3d at 1193 n.7 ("[A]n award may properly be vacated *either* because it 'violates a specific command of some law' *or* 'because of inconsistency with public policy.'") (quoting Honold, 405 F.2d at 1128 n.7) (emphasis supplied).

The District Court's order dismissing the Number of Occurrences action as moot is subject to plenary review. See Ruocchio v. United Transp. Union, Local 60, 181 F.3d 376, 382 n.8 (3d Cir. 1999) ("The plenary standard of review seems appropriate since mootness doctrine relates to courts' constitutional authority to hear a case. . . .").

7

B.

ACandS argues that, because the arbitration panel considered and accepted the argument that operations should be zero, the arbitration proceeding and award violated the automatic stay provision of 11 U.S.C. § 362. Section 362 of the Bankruptcy Act provides in part:

> Automatic Stay.
> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of--
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title
> . . . .
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate

11 U.S.C. § 362(a).

The stay mandated by this provision is automatic in that the debtor does not have to make any formal request that it be issued or that it apply to a particular proceeding. Rather, the onus is on the party seeking to proceed to petition the Bankruptcy Court for relief from the stay. See 11 U.S.C. § 362(d). The scope of the automatic stay is broad and covers all proceedings against a debtor, including arbitration. Ass'n. of St. Croix Condominium Owners v. St. Croix Hotel Corp., 682 F.2d 446, 448 (3d Cir. 1982) (citing H.R.Rep.No.95-595, at 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6296-97). "Because the automatic stay serves the interests of both debtors and creditors, it may not be waived and its scope may not be limited by a debtor." Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1204 (3d Cir. 1992). Sub-sections 362(a)(1) and 362(a)(3) differ in that the stay of actions and proceedings provided for by § 362(a)(1) applies only to actions brought *against* the debtor--"the statute does not address

8

actions brought by the debtor which would inure to the benefit of the bankruptcy estate." St. Croix, 682 F.2d at 448. Section 362(a)(3), on the other hand, applies to actions against third parties as well as actions against the debtor. See In re Krystal Cadillac Oldsmobile GMC Truck, Inc., 142 F.3d 631, 637 n.11 (3d Cir. 1998).

ACandS argues that the arbitration panel's award violates both § 362(a)(1) and § 362(a)(3). We agree that the automatic stay applied to the arbitration and that the panel should have halted the arbitration once it became apparent that proceeding further could negatively impact the bankruptcy estate. We also hold that the arbitration award is invalid because it diminishes the property of the estate.

1.

With respect to the application of § 362(a)(1), the District Court held that the automatic stay did not apply because the arbitration was an action initiated by the debtor. JA1-18. While in the context of a trial it is simple to distinguish between claims and counter-claims that may support judicial relief, in the context of arbitration, especially in the absence of a joint statement of issues submitted, it is impossible to definitively classify the arguments presented. Travelers contends that its arguments in favor of a zero allocation of claims to the products coverage should be classified as a permissible defense. Defenses, as opposed to counter-claims, do not violate the automatic stay because the stay does not seek to prevent defendants sued by a debtor from defending their legal rights and "the defendant in the bankrupt's suit is not, by opposing that suit, seeking to take possession of it. . . ." Martin-Trigona v. Champion Fed. Sav. & Loan Ass'n., 892 F.2d 575, 577 (7th Cir. 1989). In the trial context, a defendant's failure to formally plead a counter-claim prevents the court from granting affirmative relief on the basis of the defendant's arguments. See Fed. R. Civ. Pro. 8. By contrast, an arbitration award will be affirmed so long as its form can be rationally derived from either the agreement between the parties *or the parties' submissions to the arbitrators* and the terms of the arbitral award are not completely irrational. Mut. Fire, Marine & Inland Ins. Co., 868 F.2d at 56. This procedural flexibility, which is essential to the utility of arbitration, allows

9

Travelers to make a colorable argument that it respected the stay by merely defending its interests when there is no question that in the trial context it would have been required to file a counterclaim in order to obtain the result it seeks to uphold. See Maritime Elec. Co., 959 F.2d at 1204 ("[W]ithin one case, actions against a debtor will be suspended even though closely related claims asserted by the debtor may continue.") (emphasis omitted). Despite the importance of procedural informality, however, the panel's authority must yield when a dispute threatens the rights of third parties in violation of the laws of the United States. To avoid interfering with the broad purposes served by the automatic stay, it was necessary for the arbitration proceeding to halt as soon as the scope of the parties' submissions supported an award that could diminish ACandS's estate. By continuing beyond this point, the proceeding violated § 362(a)(1), and the panel's deliberations and the resulting award are therefore void.

2.

The District Court rejected ACandS's argument that the arbitration award itself, as distinct from the proceeding, violated § 362(a)(3) by stripping ACandS of a valuable property right. ACandS argues that the award's reallocation of claims under the Letter Agreement to 0% operations and 100% products deprived the bankruptcy estate of property covered by the automatic stay by reducing the amount of insurance coverage available to the debtor. We agree with this argument because the contractual right secured by the Letter Agreement allocating 45% of the asbestos claims to operations was property of the bankruptcy estate. By effectively terminating ACandS's insurance coverage, the arbitration award had a clear adverse effect on that property interest.

The interests classified as "property of the estate" protected by § 362(a)(3) are defined by 11 U.S.C. § 541. In re Atlantic Bus. & Community Corp., 901 F.2d 325, 328 (3d Cir. 1990). It has long been the rule in this Circuit that insurance policies are considered part of the property of a bankruptcy estate. Estate of Lellock v. The Prudential Ins. Co. of Am., 811 F.2d 186, 189 (3d Cir. 1987) (holding that an insurance policy is property of the estate within 11 U.S.C. § 541 even though the policy has not matured, has no cash surrender value and is otherwise contingent); see also Tringali v.

10

Hathaway Mach. Co., 796 F.2d 553, 560 (1st Cir. 1986); see generally 3-362 Collier on Bankruptcy P 362.03 (15th ed. revised) ("[T]he prevailing view is that an insurance policy is property of the estate, protected by the automatic stay of § 362(a)(3)."). The fact that the Letter Agreement is not itself an insurance policy, and so the rights secured by that contract merely pertain to ACandS's right to coverage, does not exclude these contractual rights from the broad definition of property found in § 541. See Westmoreland Human Opportunities, Inc. v. Walsh, 246 F.3d 233, 242 (3d Cir. 2001) (definition of property "encompasses rights and interests arising from ordinary contractual relationships"). Furthermore, the contractual rights secured by the Letter Agreement and insurance policies are property of the estate regardless of the fact that all of the proceeds from any recovery will be exhausted in satisfaction of outstanding settlements. See Maertin v. Armstrong World Indus., Inc., 241 F.Supp.2d 434 (D.N.J. 2002); In re Johns Manville Corp., 40 B.R. 219, 230-31 (S.D.N.Y. 1984).

For a claim to fall within the scope of § 362(a)(3), it must also be shown that the grant of affirmative relief to Travelers constitutes an act to obtain possession of ACandS's contractual right to a 45% allocation of claims to the operations coverage. Although it cannot accurately be said that Travelers obtained ACandS' rights under the policy, we nevertheless hold that the grant of affirmative relief was an act barred by the automatic stay. The possession or control language of Section 362(a)(3) has consistently been interpreted to prevent acts that diminish future recoveries from a debtor's insurance policies. See, e.g., A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1001 (4th Cir. 1986) (noting that a debtor's insurance policy may well be the most important asset of the estate, and that "any action in which the judgment may diminish this 'important asset' is unquestionably subject to a stay under [11 U.S.C. 362(a)(3)]") (quoting In re Johns Manville Corp., 40 B.R. at 229). In Matter of J&L Transport, Inc., 47 B.R. 51 (Bankr. W.D. Wis.), the court held that an insurer was barred by § 362(a)(3) from cancelling the debtor's policy so long as the debtor was not in monetary default. Similarly, because the grant of affirmative relief to Travelers had the effect of terminating ACandS's coverage, we hold that it violated the automatic stay.

3.

11

Travelers argues that even if the panel's award violates the automatic stay, equity precludes its application in this case. This argument fails because no equitable power to grant relief from an automatic stay rests with the District Court. To the extent that an equitable exception to the automatic stay exists, it rests solely in the Bankruptcy Courts. "Only the bankruptcy court with jurisdiction over a debtor's case has the authority to grant relief from the stay of judicial proceedings against the debtor." Maritime Elec. Co., 959 F.2d at 1204.

## C.

The District Court dismissed the Number of Occurrences Action on the grounds that the enforceable arbitration award rendered it moot. The action was brought by ACandS in response to Travelers' stated intention to treat all operations claims as arising out of the same occurrence, and therefore subject to the $1 million per occurrence cap. The District Court addressed this issue in footnote 9:

> The complaint in this case deals with the "number of occurrences" under the insurance policies ACANDS has with Travelers. Since the Arbitration Panel has rendered this issue moot by ruling that there is zero remaining coverage under the products policies in this case, there is no reason for this court to decide the "number of occurrences" posed by ACANDS in this case.

JA1-20 (District Court Opinion). As explained above, the panel's award violates the automatic stay and is therefore void ab initio. See Maritime Elec. Co., 959 F.2d at 1206. As a result, ACandS is still entitled to a 45% allocation of claims to the policies' operations coverage, and the dispute concerning whether the asbestos claims present multiple or single occurrences under those policies is justiciable. Accordingly, the Number of Occurrences Action should not have been held to be moot.

## III.

For the reasons stated above, the order of the District Court

12

is vacated.  The case is remanded with instructions to vacate the arbitration award for resolution of the pending action.