

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-18-2008

# Brennan v. Cigna Corp

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-5027

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Brennan v. Cigna Corp" (2008). *2008 Decisions*. Paper 1008.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1008

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case Nos.: 06-5027 & 06-5124

ALBERTA BYRD BRENNAN, ETHYL WYCHE, SHARON D. MOORE,
ROBIN BRIDGES JOHNSON, BRENDA GRAVES, NAOMI L. MOMENT
and DEBORAH REID,
Appellants/Cross-Appellees,

v.

CIGNA CORPORATION; ACE INA HOLDINGS, INC.,
INSURANCE COMPANY OF NORTH AMERICA,
BRANDYWINE HOLDINGS CORP. AND CENTURY INDEMNITY CO.
Appellees/Cross-Appellants

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
Civil Action No. 00-02730
District Judges: The Honorable Petrese B. Tucker & The Honorable Juan R. Sanchez

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 15, 2008

Before: SLOVITER AND SMITH, *Circuit Judges*,
and DIAMOND, *District Judge*[*]

(Filed: June 18, 2008)

OPINION

---

[*]The Honorable Gustave Diamond, Senior District Judge for the Western District
of Pennsylvania, sitting by designation.

1

DIAMOND, *District Judge*.

Presently before us are cross-appeals from orders entered in a case alleging race discrimination resolved through binding arbitration. Plaintiffs Brennan, Moore, Johnson, Graves and Moment appeal from an order of the district court dated June 13, 2001, granting a motion to compel arbitration, an order that became final and appealable upon the district court's entry of an order dated November 9, 2006, confirming the opinion and award of the arbitrator. Defendants cross-appeal from the November 9, 2006, order insofar as it confirmed the arbitrator's award of damages to plaintiffs Wyche and Reid.[1] For the reasons set forth below, we will affirm both orders.

## I.

Because we write principally for the parties, we will state only the facts necessary for our analysis. The seven named plaintiffs are African-American females who were employed as claims handlers or claims technicians, initially by the defendant subsidiaries of CIGNA Corporation[2], then, effective July 2, 1999, by defendant ACE INA Holdings, Inc., which had acquired CIGNA's domestic property and casualty operations.

In October of 1994, CIGNA adopted a mediation/arbitration policy mandating

---

[1] Wyche and Reid did not join the appeal of their fellow plaintiffs from the order compelling arbitration. Their status in this appeal is solely that of cross-appellees.

[2] Insurance Company of North America, Brandywine Holding Corporation & Century Indemnity Company.

2

arbitration of all employment disputes. This policy was distributed to all of CIGNA's employees, including the seven plaintiffs, via interoffice mail. Amendments to the policy were distributed via interoffice mail to all employees, including the seven plaintiffs, in 1995 and again in 1996.

In July of 1998, CIGNA distributed to all of its employees, including the seven plaintiffs, an employee handbook which again made clear that binding arbitration was a term and condition of employment. Along with the handbook, CIGNA distributed a form for each employee to sign acknowledging that the employee received and reviewed the handbook. This acknowledgment initially tied the employee's signature on the form to eligibility for future pay raises and benefits. However, the receipt form later was amended to delete this link, and merely required an acknowledgment that the handbook had been received and reviewed. Each of the seven plaintiffs signed this amended receipt form.

Following ACE's acquisition of CIGNA on July 2, 1999, ACE distributed to all of its employees a memorandum indicating that CIGNA's arbitration/mediation policy would remain in effect. This information also was posted on ACE's intranet site. In February of 2000, ACE distributed via electronic mail to all of its employees an employee guide setting forth ACE's arbitration policy and emphasizing that this policy was a binding term and condition of employment. The guide contained a link to a receipt and acknowledgment form, which Moore, Graves, Wyche and Reid signed and returned, but

3

Brennan, Johnson and Moment did not. Brennan resigned from ACE in October of 1999, prior to distribution of the employee guide. Johnson and Moment resigned shortly after distribution of the guide, on March 24, 2000, and May 22, 2000, respectively.

On September 7, 2000, the seven plaintiffs filed an amended complaint in the district court alleging race discrimination in violation of Title VII of the Civil Rights Act (Count One), 42 U.S.C. § 1981 (Count Two) and the Pennsylvania Human Relations Act (Count Three). The district court granted defendants' motion to stay and to compel arbitration pursuant to the Federal Arbitration Act ("FAA"). The parties selected an arbitrator and submitted the amended complaint as the arbitration demand. Following testimony and post-hearing briefing, the arbitrator issued an award of $25,000.00 each to Wyche and Reid for emotional damages "relating to discriminatory treatment." All other claims by Wyche and Reid, as well as all of the claims by the other five plaintiffs, were denied. By order dated November 9, 2006, the district court denied defendants' motion to vacate or partially modify and confirmed the arbitrator's awards to Wyche and Reid.

II.

We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. The district court's decision to compel arbitration is subject to plenary review. *Great Western Mortgage Corp. v. Peacock*, 110 F.3d 222, 226 (3d Cir. 1999). We also exercise plenary review over the district court's decisions concerning the scope of the parties' submission to the arbitrator and the validity of the arbitration award. *Metromedia Energy, Inc. v. Enserch*

4

*Energy Servs., Inc.,* 409 F.3d 574, 579 (3d Cir. 2005).

III.

Brennan, Moore, Johnson, Graves and Moment appeal from the district court's order compelling arbitration alleging that the arbitration policy is unenforceable because of fraud and coercion. In addition, Brennan, Johnson and Moment contend that they improperly were compelled to arbitrate with ACE in light of the fact that none of them signed the receipt form for the ACE employee guide. We conclude that valid arbitration agreements exist and are enforceable as to each of the plaintiff-appellants.

In reviewing the decision to compel arbitration, we are limited to a "narrow scope" of inquiry. *Gay v. CreditInform*, 511 F.3d 369, 386 (3d. Cir. 2007). Specifically, when reviewing a decision compelling arbitration under the FAA, we do not consider the merits of the claim, but only determine whether there is a valid agreement to arbitrate. *Peacock*, 110 F.3d at 228. In making this determination, we look to the relevant state law of contracts. *Harris*, 183 F.3d at 179.

We also recognize that the FAA establishes a strong federal policy in favor of the resolution of disputes through arbitration, *Alexander v. Anthony Int'l, L.P.,* 341 F.3d 256, 263 (3d Cir. 2003), and that the law presumptively favors the enforcement of arbitration agreements. *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999). Nevertheless, a court may hold that an agreement to arbitrate is unenforceable based on a generally applicable contract defense, such as fraud, coercion or unconscionability.

5

*Parilla v. IAP Worldwide Serv., V.I., Inc.*, 368 F.3d 269, 276 (3d Cir. 2004).

In this case, all five plaintiff-appellants were provided with copies of the CIGNA arbitration policy on four separate occasions between 1994 and 1998. On the last of those occasions, all five plaintiff-appellants acknowledged that they had received and reviewed the arbitration policy by signing and returning the amended receipt forms for the CIGNA handbook. In addition, all five plaintiff-appellants still were employed on July 2, 1999, when ACE acquired CIGNA's holdings, and all were informed at that time that CIGNA's arbitration policy would remain in effect. Finally, four of the five plaintiff-appellants were distributed copies of ACE's arbitration policy in February of 2000, and two signed the acknowledgment form for that policy.

The primary argument of plaintiff-appellants is that their signatures on the 1998 receipt forms were "coerced" by "severe economic distress" arising from a disparity in bargaining power, and therefore the arbitration agreement is unenforceable as a contract of adhesion.[3] However, unequal bargaining power is not alone enough to make an

_____

[3] We find no merit to any assertion of fraud on the part of defendants. Defendants notified all of their employees multiple times between 1994 and 2000 that they were subject to a binding arbitration policy and that such policy was a term and condition of employment. Copies of the policies were delivered to each employee in 1994, 1995, 1996, and 1998 and the policy was available at all times on ACE's intranet site after its acquisition of CIGNA's subsidiaries in 1999. The fact that plaintiff-appellants do not specifically recall having received, or may not have read, these policies does not constitute fraud nor render the terms of the policies unenforceable under Pennsylvania law, as the failure to read a contract does not excuse a party from being bound by its

agreement to arbitrate a contract of adhesion. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991). More than a disparity in bargaining power is needed to show that an arbitration agreement between an employer and its employee was not entered into willingly, *Peacock*, 110 F.3d at 229, and plaintiff-appellants have not made a showing of fraud or such overwhelming economic power that would provide for the revocation of a contract.

Moreover, under Pennsylvania law, in order for a contract to be invalidated as a contract of adhesion, a party must establish both a lack of meaningful choice about whether to accept the provision in question <u>and</u> that the disputed provisions are so one-sided as to be oppressive. *Seus v. Nuveen & Co, Inc.*, 146 F.3d 175, 184 (3d Cir. 1998) (quoting *Stebok v. American Gen. Life & Accident Ins. Co.*, 715 F. Supp. 711, 714 (W.D. Pa.), *aff'd,* 888 F.2d 1382 (3d Cir. 1989)). Here, even assuming *arguendo* a lack of meaningful choice, no contention has been made that the terms of the arbitration agreement are so one-sided as to be oppressive.

We also find a valid agreement to arbitrate with ACE as to each of the five plaintiff-appellants. Although Brennan resigned before ACE's 2000 arbitration policy was distributed, and Johnson and Moment resigned after distribution but without having returned the receipt form for that policy, each of the plaintiff-appellants still was

---

terms. *Simeone v. Simeone*, 525 Pa. 392, 581 A.2d 162, 165 (1990) ("[c]ontracting parties are normally bound by their agreements, without regard to whether the terms thereof were read or fully understood . . . .").

7

employed at the time of ACE's acquisition of CIGNA, and each was notified at that time that the CIGNA arbitration policy to which they all had acknowledged receipt in 1998 would remain in effect. Thus, there never was a time when all of the plaintiff-appellants were not subject to a valid and enforceable arbitration policy as to either CIGNA or ACE.

IV.

Turning to the cross-appeal, defendants assert that the arbitrator's awards to Wyche and Reid exceeded the scope of his authority because he awarded damages for a "hostile work environment", an issue that defendants assert was not before him. Upon review, we conclude that the arbitrator's award was within the scope of his authority.

An arbitrator has the authority to decide only the issues that have been submitted for arbitration by the parties. *Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.*, 489 F.3d 580, 584 (3d Cir. 2007). However, where an arbitration award rationally can be derived from either the agreement of the parties or the parties' submission to the arbitrator, it will be enforced. *Acands, Inc. v. Travelers Cas. and Sur. Co.,* 435 F.3d 252, 258 (3d Cir. 2006).

The arbitrator in this case awarded damages to Wyche and Reid for emotional damages "relating to discriminatory treatment." This award rationally can be derived from the parties' submission to the arbitrator, which took the form of the amended complaint. The entire crux of the amended complaint is the allegation that black employees were treated differently than white employees. Paragraph 81 of the amended

8

complaint expressly alleges that "[s]imilar unlawful and improper actions, including the unfair treatment, harassment, lack of promotion and termination experienced by Wyche have been the fate of other black employees . . . ." (App. 051). Identical allegations are raised at paragraph 187 as to Reid. (App. 071). In addition, the testimony of Wyche and Reid, which the arbitrator found to be compelling and uncontradicted, demonstrates that both were subjected to condescending, belittling and offensive verbal treatment from their supervisor to which white employees were not subjected. The arbitrator's award for emotional damages "relating to discriminatory treatment" rationally can be derived from the parties' submission to the arbitrator.

Defendants contend that the arbitrator acted outside the scope of his authority in awarding damages to Wyche and Reid because, in effect, he found that both were subjected to a "hostile work environment", a cause of action separate and distinct from disparate treatment as to wages, benefits, bonuses and promotions, involving different elements and standards of proof. Because plaintiffs did not specifically assert a distinct cause of action for "hostile work environment" in the amended complaint, and the amended complaint was the only submission to the arbitrator, defendants contend that the arbitrator acted outside the scope of his authority in granting an award to Wyche and Reid for a hostile work environment.

Our review of the interpretation of a submission to an arbitrator and to the arbitrator's award is highly deferential. *Matteson v. Ryder Sys., Inc.,* 99 F.3d 108, 113

9

(3d Cir. 1996).  We presume that an arbitrator acted within the scope of his authority, and that presumption may not be rebutted by an ambiguity in a written opinion.  *Metromedia*, 409 F.3d at 579-80.   Rather, only where it is obvious from a written opinion that the arbitrator exceeded his authority may we so conclude.  *Id.*

Here, it is not obvious from the opinion that the arbitrator acted outside the scope of his authority.   To the contrary, although the arbitrator did use the phrase "hostile work environment" twice in his opinion, reading that opinion in its entirety it is clear that the arbitrator found that Wyche and Reid were subjected to *racially disparate treatment* taking the form of demeaning verbal abuse and hostility, the very claim at the heart of plaintiffs' amended complaint and the submission to the arbitrator.  At worst, the isolated use of the phrase "hostile work environment" does nothing more than arguably create an ambiguity insufficient to overcome the presumption that the arbitrator acted within the scope of his authority.

## V.

Accordingly, for the foregoing reasons, we will affirm both the order of the district court compelling arbitration and the order confirming the arbitrator's award.

10