IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**

August 05, 2022 04:14 PM
ST-2020-CV-00382
**TAMARA CHARLES
CLERK OF THE COURT**

# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## District of St. Thomas/St. John

**Blue Shore Grill, LLC d/b/a Havana Blue & Sandbar,**

                **Plaintiff**

v.

**Guardian Insurance Company, Inc. et al,**
                **Defendant.**

Case Number: **ST-2020-CV-00382**
Action: **Breach Of Contract & Damages**

## NOTICE of ENTRY
## of
## <u>Memorandum Opinion</u>

**To:** Richard H. Dollison, Esquire      Maria T. Hodge, Esquire

W. Mark Wilczynski, Esquire      Justin Tyler Crocker, Esquire

                                   Arya A. Li, Esquire

                                   Michal Meiler, Esquire

**Please take notice that on August 05, 2022
a(n)           Memorandum Opinion
dated     August 5, 2022     was entered
by the Clerk in the above-titled matter.**

**Dated:**   **August 05, 2022**

                                       **Tamara Charles**
                                      **Clerk of the Court**

By:

                                        **Audrey Brin**
                                        **Court Clerk II**

IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS



**FILED**
August 05, 2022 04:12 PM
ST-2020-CV-00382
**TAMARA CHARLES**
**CLERK OF THE COURT**

## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS/ ST. JOHN

| | |
|---|---|
| BLUE SHORE GRILL, LLC d/b/a<br>HAVANA BLUE & SANDBAR<br><br>   Plaintiff,<br><br>   v.<br><br>GUARDIAN INSURANCE<br>COMPANY, INC., and<br>WORLDCLAIM GLOBAL CLAIMS<br>MANAGEMENT, LLC,<br><br>   Defendants. | CASE NO. ST-20-CV-382<br><br>ACTION FOR BREACH OF CONTRACT, UNFAIR AND DECEPTIVE TRADE PRACTICES, DECEPTIVE BUSINESS PRACTICES, NEGLIGENCE, NEGLIGENT MISREPRESENTATION, UNJUST ENRICHMENT, PROFESSIONAL MALPRACTICE, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY AND PROMISSORY ESTOPPEL<br><br>Cite as 2022 VI Super 71U |

**RICHARD H. DOLLISON, Esq.**
Law Offices of Richard H. Dollison, P.C.
5143 Palm Passage, Ste. B28/29
P.O. Box 6135
St. Thomas, VI 00804
*Attorneys for Plaintiff*

**ARYA A. LI, Esq.**
**MICHAL MEILER, Esq.**
VER PLOEG & MARINO, P.A.
100 S.E. Second Street, Suite 3300
Miami, FL 33131
*Attorneys for Plaintiff*

**MARIA TANKENSON HODGE, Esq.**
Hodge & Hodge
1340 Taarneberg
St. Thomas, VI 00802
*Attorneys for Defendant*
*Guardian Insurance Company, Inc.*

**W. MARK WILCZYNSKI, Esq.**
**JUSTIN T. CROCKER, Esq.**
Law Office of W. Mark Wilczynski
Palm Passage, Ste. C20-22
P.O. Box 1150
St. Thomas, VI 00804-1150
*Attorneys for Defendant WorldClaim Global*
*Claims Management, LLC*

**CARTY, RENÉE GUMBS,** Judge

## MEMORANDUM OPINION

¶1 **BEFORE THE COURT** are Defendants Guardian Insurance Company, Inc. ("Guardian") and WorldClaim Global Claims Management, LLC ("WorldClaim") motions to dismiss. Guardian filed its motion on October 26, 2020, and WorldClaim filed its motion on November 23, 2020. Plaintiff, Blue Shore Grill, LLC ("Blue Shore") filed an opposition to Guardian's motion on November 16, 2020, and to WorldClaim on December 14, 2020. Guardian and WorldClaim filed replies on December 9, 2020, and January 7, 2021, respectively. For the following reasons, the Court will deny Guardian's motion to dismiss and partially grant and partially deny WorldClaim's motion.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Blue Shore, commonly known as Havana Blue and Sandbar, was a beachfront restaurant and lounge located in Estate Bakkeroe on Morning Star beach on St. Thomas. In September 2017, Hurricanes Irma and Maria made landfall in the Virgin Islands two weeks apart from each other.[1] The restaurant sustained windstorm damages. At the time of both storms, Blue Shore was insured by Guardian Insurance with a policy limit of $350,000. Following Hurricane Irma, on September 14, 2017, Blue Shore filed a property loss notice and on September 22, 2017, after both storms, Blue Shore provided photographs of the damage to Guardian. In November 2017, Blue Shore retained WorldClaim, a public adjuster, to settle both the Hurricane Irma and Hurricane Maria claims.

¶3 On April 24, 2018, WorldClaim sent an email to Blue Shore advising them there was an offer of $621,000 ($621,000 less the deductible, and less a $100,000 advance already paid to Blue Shore,

---

[1] The Virgin Islands experienced two Category 5 storms, Hurricanes Irma and Maria, on September 6, and September 20, 2017, respectively. *See* National Oceanic and Atmospheric Administration and National Weather Service, "National Hurricane Center Tropical Cyclone Report: Hurricane Irma" published on September 24, 2021, at 5, and "National Hurricane Center Tropical Cyclone Report: Hurricane Maria" published February 14, 2019, at 30.

net $503,000) to resolve both claims.[2] WorldClaim advised Blue Shore that given the policy limits this is a "fair" offer and Blue Shore accepted.[3]

¶4 On May 17, 2018, Guardian paid Blue Shore $232,500 on the Hurricane Irma claim. Blue Shore alleges this payment was a partial payment going towards the $621,000 total. Guardian Insurance alleges this was the final payment and covered both storms, as indicated on the release which Blue Shore signed. Guardian argues that there was never an agreement for $621,000 and no claim was filed for Hurricane Maria; thus, Blue Shore can only receive up to the $350,000 maximum amount allowed on the policy. Blue Shore maintains that WorldClaim represented to them that there was an offer from Guardian for $621,000, covering both claims, and Blue Shore promptly accepted that offer, making the agreement an enforceable contract.

¶5 Despite signing the releases, between May 17, 2018, and December 12, 2019, Blue Shore and WorldClaim were in continued conversations about the remaining amount to be paid to Blue Shore for both claims. During these communications, WorldClaim's adjuster repeatedly represented to Blue Shore that he was working with Guardian to obtain the settlement.[4] However, on December 12, 2019, Guardian informed Blue Shore that there would not be another payment because a claim was never made for Hurricane Maria damages. Guardian also informed Blue Shore that they were underinsured at the time of both hurricanes, and therefore had already received the full amount they can recover under the policy limits.

---

[2] Plaintiff's Exhibit B: Email from Russell Heath, WorldClaim's representative, to Blue Shore's representatives on April 24, 2018.

[3] *Id.*

[4] Plaintiff's Exhibit C: Text messages between Russell Heath and Blue Shore's representatives from November 2017 to August 2018 wherein WorldClaim advises Blue Shore they are actively working with and communicating with Guardian regarding the settlement for both hurricanes.

¶6     On September 22, 2020, Blue Shore filed suit against both Guardian and WorldClaim. Plaintiff alleges Guardian breached their contract by not paying the $621,000 offered as a settlement agreement, thereby engaging in bad faith, and unfair trade and business practices. Blue Shore also filed against WorldClaim, alleging WorldClaim was negligent in failing to file a claim for Hurricane Maria damages and by misrepresenting the settlement agreement to Blue Shore. Additionally, Blue Shore brought claims for unfair trade and business practices and under the theory of promissory estoppel against WorldClaim.

¶7     Guardian Insurance argues Blue Shore is estopped from bringing claims against them because the applicable statutes of limitations have expired and further, that there was no settlement agreement; therefore, Guardian cannot be in breach of contract. Worldclaim argues Blue Shore did not properly allege negligence; they did not establish a duty of care and the cause of action was filed outside of the two-year statute of limitations period for tort actions. WorldClaim further argues Blue Shore cannot bring promissory estoppel claims against them since there was a valid contract between the parties.

## STANDARD OF REVIEW

¶8     To survive a motion to dismiss, a complaint "needs only [to] present a short, plain statement of the causes of action and the basis for the claims for relief. A complaint does not have to plead specific items of proof in its allegations but must aver more than labels and conclusions." *Brathwaite v. HDVI Holding Co., Inc.* 2017 WL 2295123 *1 (V.I. Super. Ct. 2017). Moreover, V.I.R. Civ. P. 8(a)(2) provides that the Virgin Islands is a notice pleading jurisdiction, which allows the Court to "take an even more liberal approach ... when considering if a complaint adequate[ly] alleges facts that put an accused party on notice of claims brought against it." *See Id.* at *2. Further, V.I.R. Civ. P. 8(a) and the Reporter's Note "eliminates any doubt that this language is calculated 'to apply[] an

approach that declines to enter dismissals of cases based on [a] failure to allege specific facts which, if established, plausibly entitle the pleader to relief.'" *See Mills-Williams v. Mapp*, 67 V.I. 574, 585 (V.I. 2017). The inquiry is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Roberts*, 416 U.S. 232, 236 (1974). Dismissal under a 12(b)(6) motion is thus "limited to those instances where it is certain that no relief could be granted under any set of facts proved." *Ransom v. Marazzo*, 848 F.2d 398, 401 (3d Cir. 1988).

## ANALYSIS

¶9    Guardian's first claim is that Blue Shore has untimely filed this lawsuit. Specifically noted in Blue Shore's insurance policy is a one-year suit provision which states:

> "[N]o suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after the inception of loss."[5]

Guardian has relied on this provision to argue that Blue Shore's claims are time-barred because the lawsuit was not filed until September 2020, three years after the hurricanes made landfall in the Virgin Islands. Blue Shore argues that the one-year suit provision does not apply to the claims because they are not considered "actions on the policy" and therefore are not covered by the one-year suit provision.[6] Additionally, Guardian argues there is not a settlement agreement, besides the release, between the two parties because Guardian did not assent to the offer.

---

[5] Guardian Insurance Policy No. INC24690-17, "Suit Against Us" Provision, *hereinafter* "suit provision."

[6] Virgin Islands courts have not issued a rule discussing whether the claims Blue Shore is bringing are considered "actions on the policy," and therefore governed by the one-year suit provision in the insurance policy. However, because Blue Shore's claims are tolled by the discovery rule and based on the alleged settlement agreement, and not the insurance policy, this Court does not need to address that issue at this time.

¶10 WorldClaim has also asserted that the applicable statutes of limitations have run, and that Blue Shore did not adequately plead a claim for negligence. Blue Shore argues the discovery rule has tolled the statute of limitations and has adequately established WorldClaim owed them a duty of care and breached that duty. The Court finds that the applicable statute of limitations for Blue Shore's claims is the six-year limitations period for contracts and the two-year limitations period for torts. *See* Title 5 V.I.C. § 31. For the following reasons, the Court will deny Guardian Insurance's motion to dismiss; and deny in part and grant in part WorldClaim's motion to dismiss.

**I.     Blue Shore's claims against Guardian Insurance are not barred by the one-year suit provision.**

**A. The discovery rule tolls the statute of limitations until December 2019.**

¶11 Blue Shore filed suit on September 22, 2020. Under Guardian's interpretation of the one-year policy, the suit should have been brought on or before September 21, 2018, because Hurricane Maria made landfall in the Virgin Islands on September 20, 2017. Guardian argues Blue Shore is facially non-compliant with the provision agreed to in the insurance policy as this action was brought three (3) years after the date of loss and the relevant facts necessary to test the timeliness were readily apparent. Guardian relies on *Pichierri v. Crowley*, 59 V.I. 973 (V.I. 2013) and *Hypolite v. Mariott Ownership Resorts (St. Thomas), Inc.*, 52 V.I. 175 (V.I. Super. Ct. 2009) to support this proposition; however, both cases can be distinguished from this matter *sub judice*.

¶12 In *Pichierri*, the plaintiff had given his four-week notice of ending his employment and in response his employer terminated him the next day. *See Pichierri* at *1. The plaintiff sued his employer for bad faith for terminating his employment early. *Id.* The plaintiff was terminated on April

5, 2006, and the lawsuit was filed on July 14, 2008.[7] In the Virgin Islands, actions brought in tort have a two-year statute of limitations. 5 Title V.I.C. § 31(5). The Supreme Court of the Virgin Islands reasoned in *Pichierri* the plaintiff knew the extent of his injuries at the time he was handed the termination letter and therefore was facially non-compliant with the statute of limitations by filing over two years from the date he was terminated.

¶13      Guardian also relies on *Hypolite*, which is also distinguishable from the facts here. In *Hypolite*, the plaintiff was injured in an accident on the defendant's property on September 18, 2006. *See Id.* at 177. However, the plaintiff did not file his lawsuit until December 1, 2008. *Id.* at 180. Like *Pichierri*, the Supreme Court reasoned that the plaintiff was aware of the extent of his injuries on the date of the accident and therefore was facially non-compliant with the applicable two-year statute of limitations period.

¶14      Guardian's reliance on these cases is misplaced as the facts are completely distinguishable from Blue Shore's claims. In both *Pichierri* and *Hypolite* the plaintiffs were aware of the extent of their injuries on the date that the injuries occurred and both plaintiffs did not file suit within the applicable statutes of limitations, rendering both suits facially non-compliant. Here, Blue Shore has properly alleged that they did not know the extent of their injuries until receiving the letter from Guardian in December 2019 informing Blue Shore that there was never a claim filed for Hurricane Maria, therefore Guardian Insurance would not be paying any additional monies on the claim. It is only at this point Blue Shore fully knew the extent of their damages. Thus, the statutory clock did not begin to run at the time of the hurricane losses, but at the time Plaintiff was notified they will not recover any additional insurance proceeds to cover their losses.

---

[7] *See Pichierri*, at *1 (noting that the plaintiff in *Pichierri* sued the parent company before suing Crowley. The plaintiff used the previous lawsuit to invoke the doctrine of equitable tolling, which this Court rejected and was affirmed by the Supreme Court of the Virgin Islands).

¶15    This proposition has been widely accepted under Virgin Islands law. Where there is a delay in determining the extent of their injuries, at no fault to the plaintiffs, then the statute of limitations is not an applicable defense. *See Spink v. General Acc. Ins. Co. of Puerto Rico, Ltd.*, 40 V.I. 396, 399 (D.V.I. 1999) (rejected on other grounds); *Charleswell v. Chase Manhattan Bank, N.A.*, 2009 WL 1850650 *11 (V.I. Super. Ct. 2009) (citing *In re Tutu Wells Contamination Litig.*, 909 F.Supp. 980, 984 (D.V.I. 1995)).

¶16    Guardian Insurance cites *Spink* to argue that suit provisions are generally enforceable so long as they are not for less than one-year. *See Spink*, at 399. *Spink* holds that the limitations period commences when the insured suffers a loss, rather than when the insurer denies the claim;[8] however, *Spink* also states that Plaintiffs cannot be estopped from bringing a claim against the insurer when the insurer delayed the suit. *Id.* at 402. In *Spink*, the insurer paid out the mortgagors of the plaintiffs' building rather than the plaintiffs. *Id.* Contractually, the plaintiffs should have been paid and the insurer spent over two years from the date of loss ignoring the plaintiffs' concerns. *Id.* Since the insurer delayed the plaintiffs from bringing a lawsuit, the insurer cannot claim that the statute of limitations has run as a defense.[9] This kind of delay "clearly contravened the duties of good faith and fair dealing that [the insurer] owed to the [plaintiffs]."[10]

¶17    Here, Guardian paid Blue Shore an advance of $100,000 on February 26, 2018, and an additional payment for $232,500, on May 18, 2018, for a total of $332,500, thus Guardian did not *per se* delay the Plaintiffs from a payout or filing suit under those payments. However, Guardian did not

---

[8] *See Spink*, at 402.

[9] *See Id.* at 403 (citing *Bowler v. Fidelity & Cas. Co.*, 53 N.J. 313, 250 A.2d 580 (1969) (estopping defendant from pleading a limitations clause as a defense where insurer failed to pay benefits that were clearly due); *Closser*, 457 A.2d at 1086 (recognizing that limitations provision may not be enforced if insurer led insured to delay suit); *General State Auth. v. Planet Ins. Co.*, 464 Pa. 162, 346 A.2d 265, 268 (1975) (same)).

[10] *See* 22 V.I.C. § 2 ("The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters.").

communicate with Blue Shore that there would not be additional payments for the Hurricane Maria claim until December 2019. Between these events, WorldClaim continuously represented to Blue Shore that they were communicating with Guardian trying to reach the settlement.[11] On September 10, 2018, several months after Blue Shore signed the May 18, 2018 release, WorldClaim advised Blue Shore that there would be a payment and that "at this point [we are] still negotiating and would rather keep it there verses a flat out denial."[12] Guardian's failure to communicate with Blue Shore that there would not be another payment, until over a year and a half had passed since the last payment, despite Blue Shore's efforts to obtain payment, delayed Blue Shore in filing the lawsuit; therefore, Blue Shore will not be barred by the one-year suit provision.

¶18     This proposition is further supported by the discovery rule. The discovery rule delays the statute of limitations when the "injury or its cause is not readily apparent to the plaintiffs at the time the injury occurs." *See Charleswell* at *11. To invoke the discovery rule, a plaintiff must show: (1.) when the plaintiff knew or should have known that he had suffered a harm, and (2.) when the plaintiff knew or should have known the cause of his injury. The discovery rule uses an objective reasonable person standard and does not "obviate plaintiffs' duty to exercise reasonable diligence with regard to the timely investigation of their possible claims." *See Id.*

¶19     In *Charleswell*, the plaintiffs did not have access to their insurance policies when the insurance company was going through the claims adjustment process. *See Charleswell*, *1-*5. Much later, the plaintiffs received their policies and knew the extent to which their claims were improperly adjusted. *Id.* The plaintiffs filed suits against the insurers for the missing sums. *Id.* The defendants argued that the plaintiffs knew of their actual injuries when they did not receive payments for the missing sums.

---

[11] Plaintiff's Exhibit C: text messages between Russell Heath and Blue Shore's representatives from November 2017 to August 2018.

[12] Plaintiff's Exhibit B: email from Russell Heath to Blue Shore's representatives on September 10, 2018.

*Id.* at \*7. The Court, agreeing with plaintiffs who invoked the discovery rule, stated that the plaintiffs would not have known the extent of their injuries until they received the policies which then notified them of the value of the missing sums. *Id.* at \*11.

¶20 Although Blue Shore can be distinguished from the plaintiffs in *Charleswell* because Blue Shore had access to its policy during the adjustment process, Blue Shore was not aware that WorldClaim apparently did not file a claim for Hurricane Maria until December 2019. After reviewing the communications between Blue Shore and WorldClaim, it is apparent Blue Shore did not know the extent of their injury until December 2019 when Guardian issued a letter informing Blue Shore there would not be any payments for the Hurricane Maria claim. It is only upon this discovery that Blue Shore became aware of the extent of their injury, hence commencement of the statute of limitations clock.

**B. The six-year statute of limitations period for contracts applies.**

¶21 Furthermore, even if the discovery rule did not apply, Blue Shore's claims are being brought against the settlement agreement which carries a six-year statute of limitations. Title 5 V.I.C. § 31(3)(a). While Guardian maintains that there was not a settlement agreement, Blue Shore has adequately shown there was an offer made to Blue Shore to resolve their losses and can therefore bring a claim for breach of contract. In the Virgin Islands, a settlement agreement is considered a separate contract, distinguishable from the insurance policy, and therefore the one-year suit provision does not apply to Blue Shore's claims and the six-year statute of limitations for contracts applies. *Castolenia v. Crafa*, 2014 WL 239427 \*2 (V.I. Super. Ct. 2014); *Govia v. Burnett*, 45 V.I. 235, 241 (V.I. Super. Ct. 2003).

¶22 For a settlement agreement to be a valid contract there must be mutual assent between parties. *See Castolenia v. Crafa.* at \*3. Additionally, a settlement agreement may be voided if there are

material or fraudulent misrepresentations. *Id.* at *6. A misrepresentation is material if "[the misrepresentation] likely would have induced a reasonable person to enter into contract." *Id.* A misrepresentation is fraudulent if "the person making [the misrepresentation] knew or believed his assertion was false at the time he made it." *Id.* To void the settlement agreement, the plaintiff must show:

(1.) There was a misrepresentation,
(2.) That the misrepresentation was fraudulent or material,
(3.) That the misrepresentation induced the recipient to enter the contract, and
(4.) That the recipient's reliance on the misrepresentation was reasonable.

*See Castolenia v.* Crafa, at *6. Mutual assent means that there was a meeting of the minds, thus the parties agreed to the terms of the contract. However, mutual assent does not "address or consider whether the parties understand the legal consequences of their actions." *See Govia v. Burnett*, at 242.

¶23      In the instant case, Guardian argues the non-existence of a settlement agreement is evidenced by Blue Shore's failure to attach one to their complaint. Yet, this argument overlooks the conversations between York Risk Services Group ("York"), the private adjuster firm hired by Guardian, and WorldClaim, Blue Shore's public adjuster retained to assist with insurance recovery. On April 24, 2018, York sent an email to WorldClaim with the statement of loss attached, showing the $503,000 recommended payment to Blue Shore to cover their damages.[13] The same email thread shows that WorldClaim represented the statement of loss to Blue Shore as the:

> "official in writing offer... It is not as high as [WorldClaim] wanted but we have had to move numbers behind the scene to make it two events and get around the co-insurance. The total gross as you see is $621,000 minus your deductible but again we need to keep in mind that this was for a $350,000 total limit. The adjuster developed the following that he does not feel can be controverted by the Insurance Company. This would obviously be minus the $100,000 advance already offered.... Let me know and I will ask him to submit and provide a Proof of Loss and fastrack a check."[14]

---

[13] Guardian's Exhibit 4: Blue Shore's Statement of Loss.
[14] Plaintiff's Exhibit B: Email from Russell Heath, WorldClaim's representative, to Blue Shore dated April 24, 2018.

It is apparent from these communications that other conversations were had regarding the settlement and that this communication is the offer memorialized in writing as the final offer. Further, as Guardian's representative, York's communications to WorldClaim constitute an offer from Guardian. "Under traditional principles of agency law, the party moving to enforce a settlement agreement carries the burden of showing that it was reasonable for the moving party to rely on the apparent authority of [the representative] to accept the agreement on his client's behalf." *Williams v. Powell*, 2018 WL 4904937 *2 (V.I. Super. Ct. 2018). The "crucial question in ascertaining whether apparent authority has been created is whether the principal has made representations concerning the agent's authority to the third party." *Id.* at *4. Here, the relationship between York and Guardian would establish apparent authority, as York was hired by Guardian to assist in resolving Blue Shore's claims. Similarly, WorldClaim, acting on behalf of Blue Shore, would have the authority to communicate the acceptance to York. Guardian knows that the communications by York, on Guardian's behalf, could be binding on Guardian. Thus, Guardian cannot claim they did not assent to the agreement communicated to WorldClaim by York.

¶24 Guardian also argues that Blue Shore's signing of the receipt which states "full and final payment of all damages" releases Guardian from any further payments. For a contract to be a valid, mutual assent is required. *See Castolenia*, at *3. In *Govia*, the Court held that there was mutual assent for a mediated settlement agreement reached between the parties. In that case, both parties were at mediation, both parties were repeatedly told about the implications of signing the agreement, and neither party objected to the agreement. *See Id.* at 243-244. Thus, the Court found mutual assent between parties. *See Id.*

12

¶25    Here, the settlement agreement did not arise from a mediation. The communications between WorldClaim and Blue Shore show it was represented to Blue Shore that there would be a net pay of $503,000 dispersed to them by Guardian.[15] Unlike the plaintiff in *Govia*, there was not a mediation where the parties were advised of the legal consequences of signing the release. Blue Shore may not have understood the legal consequences of signing the release which said, "full and final payment of all damages." Notably, the "interim payment" of the $100,000 advance to Blue Shore also contained the "full and final payment" language but was distinguished with "interim payment."[16] Further discovery would be required to determine whether Blue Shore knew that the $232,500 payment would be the final payment from Guardian at the time they signed the release.

¶26    Viewing all evidence in the light most favorable to Blue Shore, the Court finds that Blue Shore has alleged enough facts to put Guardian on notice of the claims being brought against them and enough facts to allege that relief may be granted. Additionally, Blue Shore's complaint was timely filed within the statutory period for contracts. For the foregoing reasons, Guardian's motion to dismiss is denied.

II.    **Blue Shore has adequately pled a claim for negligence against WorldClaim and is not barred by the statute of limitations; however, Blue Shore cannot bring a claim for promissory estoppel when a valid contract exists.**

A. **Blue Shore has adequately pled a claim for negligence under the notice pleading standard.**

¶27    WorldClaim alleges that Blue Shore has not adequately pled a claim for negligence. They argue that the statements, "[a]s a result of WorldClaim's negligent failure to fulfill its duties to Blue Shore, Blue Shore suffered and continues to suffer damages" and that Plaintiff "reasonably relied on WorldClaim to negotiate a reasonable settlement on behalf of Blue Shore, and once it did, to ensure

---

[15] *See* Guardian's Exhibit 3.
[16] Guardian's Exhibit 2.

that Blue Shore received the agreed upon settlement payment," are too conclusive to adequately plead a claim for negligence. Additionally, WorldClaim argues they did not owe a duty to Blue Shore and therefore Blue Shore cannot bring a claim for negligence. The Court disagrees.

¶28 As previously noted, the Virgin Islands is a notice pleading jurisdiction, which carries a liberal pleading standard. *See Olea v. Virgin Islands Telephone Corporation*, 2018 WL 4904935 *2 (V.I. Super. Ct. 2018).[17] The plaintiff only needs to allege enough facts that "put an accused party on notice of the claims brought against it." *Id.* at 3 (citing *Mills-Williams*, at 585). Therefore, even a "bare allegation of negligence satisfies a notice pleading standard." *Gifford v. Virgin Islands Telephone Corporation*, 2018 WL 2386906 *3 (V.I. Super. Ct. 2018). However, the allegations in the complaint need to be more than merely conclusory. *See Gardiner v. St. Croix District Governing Board of Directors*, 2019 WL 3814427 *2 (V.I. Super. Ct. 2019).

¶29 In *Gardiner*, the defendant argued that plaintiff's claims were too conclusory and therefore must be dismissed. *See Gardiner*, at *1. The plaintiff alleged that the defendant had violated the Fourteenth Amendment and engaged in racketeering. *Id.* at *1, *7. This Court determined that the plaintiff's statements that the defendant violated the Fourteenth Amendment by "terminating his hospital privileges without having an opportunity to address the allegations against him first" was enough to have adequately placed the defendants on notice of the claims against them "in a manner that makes them more than just conclusory." *Id.* at *2. However, this Court also decided that plaintiff's statements that the defendants had "engaged in a pattern of racketeering activity that affects interstate and foreign commerce" failed to state a proper claim and was dismissed for being

---

[17] *See also Olea*, at *5, (holding that over a Rule 12(e) challenge, a plaintiff's complaint which only included statements such as, "[the defendants] carelessly, negligently, and/or unlawfully constructed, operated, inspected, and/or maintained…" and "[defendants] breached their legal duty of care to plaintiff," were enough to survive a motion to dismiss because these statements were sufficient to give each of the parties notice of plaintiff's negligence claim.).

conclusory. *Id.* at *7. The difference between the two being that the Fourteenth Amendment claim had some particularity, whereas the racketeering claim was merely just that the defendant committed racketeering activities.

¶30    Like *Gardiner*, Blue Shore has put WorldClaim on proper notice of the claims brought against it. Blue Shore, with even more specificity than the *Gardiner* plaintiff's Fourteenth Amendment claim, alleges that WorldClaim:

(1.) Held itself out as a public adjuster;
(2.) Failed to properly and effectively represent Blue Shore;
(3.) Demonstrated a wanton, reckless indifference to Blue Shore's risk of injury by failing to properly make a claim for damages sustained by Blue Shore from Hurricane Maria;
(4.) Demonstrated a wanton, reckless indifference to Blue Shore by failing to secure a Settlement Agreement; and
(5.) Continues to inflict damages on Blue Shore.

These claims are sufficient for WorldClaim to be placed on notice of the negligence claim brought against them. Blue Shore has provided email communications and text messages sufficient to show Blue Shore was under the belief that a claim for Maria was filed and WorldClaim had obtained an offer for $621,000. These communications show with particularity that there is a claim for negligence and provide sufficient details to put WorldClaim on notice of the claims brought against them. Therefore, Blue Shore has properly alleged a claim for negligence against WorldClaim.

¶31    Additionally, WorldClaim argues that they did not owe a duty to Blue Shore and therefore Blue Shore does not have a proper claim for negligence. WorldClaim Global Claims Management, LLC, is a public adjuster under Virgin Islands law. A public adjuster: "is an adjuster employed by and representing solely the financial interests of the insured named in the policy." *See Benjamin v. Thomas Howell Group*, 2002 WL 31573004 *2 (D.V.I. 2002) (citing 22 V.I.C. §751(a)(2)). Thus, by definition, WorldClaim had a duty to Blue Shore to represent their interests in settling both hurricane

claims because "the beneficiary of the duty owed by an adjuster depends upon the type of adjuster." In *Benjamin v. Thomas Howell Group*, the court reasoned that whereas a private adjuster owes a duty to the insurance carrier and not the insured, a public adjuster's duty is to the insured. *See Id.* at *2.

¶32    For the same reasons, Blue Shore has adequately pled claims for breach of contract and unfair trade practices and unfair business practices. It is undisputed that WorldClaim and Blue Shore had entered a contract for WorldClaim to represent Blue Shore in settling both claims globally, therefore WorldClaim owed a duty to Blue Shore. Blue Shore has adequately pled that WorldClaim failed to negotiate a settlement agreement and made false representations to Blue Shore throughout their contractual relationship, therefore Blue Shore can bring claims for both unfair trade and business practices.

### B. Blue Shore's complaint against WorldClaim is timely under the applicable statute of limitations.

¶33    WorldClaim asserts that the claims against it are also barred under the statute of limitations for torts. WorldClaim argues that the two-year statute of limitations for torts has elapsed and that the latest day the limitations period could have begun to run is May 18, 2018, when Blue Shore signed the release from Guardian. WorldClaim argues that it was at this point that Blue Shore should have been on notice of the extent of their injury. As for the same reasons stated for Guardian, the discovery rule applies to Blue Shore's claims because it was not until December 19, 2019, that Blue Shore learned there was not a claim filed for Hurricane Maria. Only at that point did Blue Shore understand the extent of their injury, thus Blue Shore's claim is timely filed.

¶34    Further, even if the discovery rule did not apply, Blue Shore's claims against WorldClaim would not be barred because the doctrine of equitable estoppel applies. An equitable estoppel defense applies when "a party justifiably relies to its detriment on another's 'promise implied by ... words,

deeds or representations.'" *See Browne v. Stanley*, 66 V.I. 328, 333 (V.I. 2017); *Pecko v. Allstate Insurance Company*, 2016 WL 6614191 *2 (E.D.Pa. 2016) (quoting *Kreutzer v. Moterey Cty. Herald Co.*, 747 A.2d 358, 361 (Pa. 2000).

¶35    In the Virgin Islands, the doctrine of equitable estoppel protects an innocent party who reasonably relies upon the material misrepresentations of another from harm. *Browne*, at 333. Equitable estoppel requires a plaintiff to demonstrate:

(1.) The party to be estopped made a material misrepresentation;
(2.) The misrepresentation induced reasonable reliance by the plaintiff; and
(3.) The reasonable reliance resulted in the plaintiff's detriment.

*Id.* at 335.

¶36    In *Browne*, the plaintiff and defendant were neighbors and had an oral agreement that the plaintiff could construct a fence on the defendant's property line. *Id.* at 330. Some years later, the defendant sued the plaintiff to remove the fence. *Id.* The plaintiff asserted the defense of equitable estoppel and stated there was an agreement between the parties; however, at trial the plaintiff did not present any evidence to show that he took steps to make this a permanent agreement. *Id.* at 337. Accordingly, the Supreme Court of the Virgin Islands found that the doctrine of equitable estoppel did not apply because the plaintiff did not offer any evidence demonstrating due diligence in making the agreement permanent, and therefore his reliance on the agreement was not reasonable under the circumstances. *Id.*

¶37    Furthermore, the Third Circuit has held that when an insurer has "suggested a possibility of settlement to the insured or asked the insured not to file suit," then equitable estoppel applies tolling the statute of limitations. *See Pecko* at *2. For a plaintiff to prevail on an equitable estoppel defense, the plaintiff "must establish a factual basis to assert the defense of waiver or estoppel." *Id.* In *Pecko*, the plaintiff asserted that the one-year statute of limitations provision did not apply because the

insurance company continued to negotiate and settle her claim after the one-year period had passed. *Id.* at \*3. The court did not apply equitable estoppel and said the suit provision was valid because the plaintiff did not present any evidence which suggested a possibility of negotiation or settlement. *See Id.* The plaintiff did not present any evidence of communication between the insurance company and the plaintiff for the four months prior to the expiration of the one-year period or for the three months after the expiration of the three-month period. *Id.*

¶38    *Browne* and *Pecko* can be distinguished from the facts here. In this matter, Blue Shore has offered evidence showing that they were in constant communication with WorldClaim, their agent, who continuously represented to them that they were in communication with Guardian Insurance.[18] There are text messages and emails which show that Blue Shore was diligent in their efforts to settle this claim. These conversations show that there was a possibility of settlement and thus the doctrine of equitable estoppel applies, tolling the statute of limitations until Blue Shore had discovered the extent of their injury.

### C. Blue Shore cannot bring a claim of promissory estoppel against WorldClaim because there is an existing contract between the parties.

¶39    Blue Shore argues that it can bring breach of contract and promissory estoppel claims simultaneously because the claims are based on different agreements and representations. Blue Shore posits its negligence and promissory estoppel claims are based on the April 24, 2018, representations that WorldClaim had negotiated a settlement agreement and the breach of contract claim is based on the January 2018 contract between Blue Shore and WorldClaim to act as an adjuster for the hurricane

---

[18] Plaintiff's Exhibit C: Text messages between Russell Heath and Blue Shore's representatives from November 2017 to August 2018 wherein WorldClaim advises Blue Shore they are actively working with and communicating with Guardian regarding the settlement for both hurricanes.

claims. WorldClaim argues that Blue Shore cannot bring a claim for promissory estoppel when a valid contract exists. The Court agrees with WorldClaim.

¶40 Blue Shore and WorldClaim both cite to *Roy v. Banco Popular de Puerto Rico*, 2018 WL 4178704 *10 (V.I. Super. 2018), to support their arguments. Blue Shore alleges that they can plead contract claims and promissory estoppel claims in the alternative. WorldClaim argues that under *Banco Popular* Blue Shore is precluded from bringing both claims. This Court in *Banco Popular* stated:

> "[A]lthough contract and promissory estoppel claims may be pled in the alternative, a plaintiff cannot recover under both theories for the same promise... If a valid, enforceable contract exists between the parties as to a certain issue, their rights and obligations are governed solely by the contract terms. Promissory estoppel is not available when an unambiguous contract exists that covers the issue for which damages are sought."

*Banco Popular*, at *10. Blue Shore argues that they can recover under breach of contract for WorldClaim's failure to file a claim for Hurricane Maria and under promissory estoppel for the representations made about the settlement agreement. The representations Blue Shore relies on under its promissory estoppel claim were made in furtherance of the existing contract between Blue Shore and WorldClaim. There was not a separate agreement that WorldClaim would negotiate a settlement agreement, this was implied in the original contract which Blue Shore hired WorldClaim to assist with insurance recovery. Accordingly, Blue Shore cannot bring claims under both promissory estoppel and breach of contract for the same agreement.

## CONCLUSION

¶41 In a notice pleading jurisdiction, the plaintiff only needs to allege enough facts to properly put the defendant on notice of the claims being brought against them. Here, Blue Shore has timely filed a complaint which alleges enough facts to put both Guardian Insurance and WorldClaim on notice of

19

the claims being brought against them; however, Blue Shore has improperly brought a claim for

promissory estoppel against WorldClaim. For the foregoing reasons, the Court will deny Guardian's

motion to dismiss. Additionally, the Court will grant WorldClaim's motion to dismiss the promissory

estoppel claim only and deny WorldClaim's motion to dismiss the negligence cause of action. An

appropriate Order follows.

Dated:  August 5, 2022

**Renée Gumbs Carty**
Judge of the Superior Court
of the Virgin Islands

**ATTEST:**
Tamara Charles
Clerk of the Court

By: _____
Donna D. Donovan
Court Clerk Supervisor  8 / 5 / 2022

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**
*******

BLUE SHORE GRILL, LLC d/b/a )
HAVANA BLUE & SANDBAR )          CASE NO. ST-20-CV-382
)
Plaintiff, )
)          ACTION FOR BREACH OF CONTRACT,
v. )          UNFAIR AND DECEPTIVE TRADE
)          PRACTICES, DECEPTIVE BUSINESS
GUARDIAN INSURANCE  COMPANY, )   PRACTICES, NEGLIGENCE, NEGLIGENT
INC., and WORLDCLAIM GLOBAL )    MISREPRESENTATION, UNJUST
CLAIMS MANAGEMENT, LLC, )        ENRICHMENT, PROFESSIONAL
)          MALPRACTICE, BREACH OF THE
)          IMPLIED COVENANT OF GOOD FAITH
Defendants. )          AND FAIR DEALING, BREACH OF
)          FIDUCIARY DUTY AND PROMISSORY
)          ESTOPPEL

Cite as 2022 VI Super 71U

## <u>ORDER</u>

The Court having issued a Memorandum Opinion on this date, it is hereby

**ORDERED** that Guardian Insurance's Motion to Dismiss is **DENIED**; and it is further

**ORDERED** that WorldClaim Global Claims Management LLC's Motion to Dismiss is **GRANTED** with respect to Count IV Promissory Estoppel; and it is further

**ORDERED** that WorldClaim Global Claims Management LLC's Motion to Dismiss is **DENIED** with respect to Count III Professional Negligence; and it is further

**ORDERED** that a copy of this Order and the accompanying Opinion shall be directed to Richard H. Dollison, Esquire, Arya A. Li, Esquire, Michal Meiler, Esquire, Maria Tankenson Hodge, Esquire, Mark Wilczynski, Esquire, and Justin Crocker, Esquire.

Dated: August 5 , 2022

**ATTEST:**
Tamara Charles
Clerk of the Court

By: _____
Donna D. Donovan
Court Clerk Supervisor · 8 / 5 / 2022

Renée Gumbs Carty
Judge of the Superior Court
of the Virgin Islands